NATIONAL FREIGHT, INC., Dart Transit Company, Owens-Illinois, Inc., Continental Can Company, Inc.

v.

Thomas D. LARSON, Secretary of Transportation; Daniel Dunn, Commissioner of Pennsylvania State Police; LeRoy S. Zimmerman, Attorney General; Richard Thornburgh, Governor, Appellants.

No. 84–5388.

United States Court of Appeals, Third Circuit.

Argued Feb. 11, 1985.

Decided April 23, 1985.

LeRoy S. Zimmerman, Atty. Gen., James J. Kutz, Deputy Atty. Gen. (argued) Andrew S. Gordon, Allen C. Warshaw, Sr. Deputy Attys. Gen., Michael J. McCaney, Jr., Asst. Counsel, Office of Atty. Gen., Harrisburg, Pa., for appellants.

John Duncan Varda, John H. Lederer (argued), DeWitt, Sundby, Huggett, Schumacher & Morgan, S.C., Madison, Wis., for appellees.

Before GARTH, BECKER and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

Historically, subject to the strictures of the commerce clause of the federal constitution, states have regulated the speed, safety and travel of vehicles on their public highways, including the regulation of truck size and the overall length of semi-trailer combinations. In 1982, Congress ventured into this area of highway regulation by enacting the Surface Transportation Assistance Act of 1982 (STAA), 49 U.S.C. § 2301 et seq., which addressed, and to some extent preempted state laws and regulations concerning, the size, weight, and configuration limits for tractor-trailers. The Commonwealth of Pennsylvania thereupon amended its vehicle code in response to this new federal law, retaining an overall length limit of 60 feet on semi-combinations with trailers over 48 feet[1] on the "National Network"[2] and continuing to impose a 60-foot overall length limit regardless of trailer length on other roads. *See* 75 Cons. Stat.Ann. § 4923(a) (Purdons Supp. 1984–1985).

Although both the federal and state statutes are, at least in part, intended to protect the safety of persons on the public highways, the construction by the Commonwealth of Pennsylvania of Congress' legislation and a differing construction by truckers and shippers of goods produced a collision in views between the parties culminating in this litigation. The case raises important questions of statutory construction and the application of the supremacy clause of the federal constitution. The district court held that Pennsylvania's 60-foot overall length limitation conflicts with the STAA and that the federal prohibition of overall length limitations applies to all public highways within a state, not just those constituting the National Network. 583 F.Supp. 1461. We affirm as to the first issue, but reverse as to the second.

### I.

Most states, acting under the police powers reserved to them by the Constitution, have regulated the overall length of semi-trailer combinations, the predominant limit being 60 feet. Pennsylvania truck size regulations conformed to the majority of the general requirement in the older version of the Pennsylvania vehicle code.

---

1. The use, in Pennsylvania, of a trailer exceeding 48 feet in length essentially involves reliance on the "grandfather clause" of the STAA which provides: "No State shall establish, maintain, or enforce any regulation of commerce which has the effect of prohibiting the use of trailers or semi-trailers of such dimensions as those that were in actual and lawful use in such State on December 1, 1982." 49 U.S.C. § 2311(b). Pennsylvania currently imposes a trailer length limit of 48 feet unless the overall length of the motor vehicle does not exceed 60 feet. *See* 75 Pa.Cons. Stat.Ann. § 4923(b)(6) (Purdons Supp. 1984–1985). The 60 foot overall length limitation was

2. The term "National Network" will be used to refer to that system of roads described in the federal statute as the "National System of Interstate and Defense Highways and those classes of qualifying Federal-aid Primary System highways as designated by the Secretary," 49 U.S.C. § 2311(a), and described in the state statute as including "interstate and certain primary highways," 75 Pa.Cons.Stat.Ann. § 4923(b)(6) (referring to 75 Pa.Cons.Stat.Ann. § 4908).

the states. For example, on June 18, 1980, Pennsylvania amended its vehicle code by increasing the maximum allowable overall length of tractor-semi-trailer combinations from 55 to 60 feet. *See* Act 1980–68, June 18, P.L. 229, 75 Pa.Cons.Stat. § 4923(a). Pennsylvania law did not regulate trailer length *per se*. However, by reason of the 60 foot overall length limitation, the statute put a practical limitation on trailer length at 53 feet, the smallest available tractor being seven feet long. At the time Pennsylvania amended its vehicle code in 1980, the federal government imposed no standards on either trailer or overall length.

When Congress passed the STAA in 1982, the Act in relevant part: (1) required the states to permit commercial motor vehicles consisting of 48–foot semi-trailers, or 28-foot twin trailers, on the National Network, *see* 49 U.S.C. §§ 2311(a) & (c); (2) forbade each state from prohibiting com-

mercial motor vehicle semi-trailer and trailer lengths that had previously been legally operated in the state, *see* 49 U.S.C. § 2311(b); and (3) prohibited each state from imposing overall length limits on most commercial motor vehicles, including semi-trailer combinations, *see* 49 U.S.C. § 2311(b).[3]

In response to the STAA, Pennsylvania amended its vehicle code. *See* 1983 Pa. Legis.Serv. 83 (Purdon) (Act No. 1983–19). On the National Network, Pennsylvania eliminated overall length limits on semi-combinations with trailers 48 feet or less in length, but retained an overall length limit of 60 feet on semi-combinations with trailers over 48 feet. *See* 75 Pa.Cons.Stat.Ann. § 4923(b)(6). On other roads, Pennsylvania imposed a 60-foot overall length limit regardless of trailer length. *See* 75 Pa.Cons. Stat.Ann. § 4923(a). The language of 75 Pa.Cons.Stat.Ann. § 4923 is set out in the margin.[4]

---

**3.** The relevant provisions read as follows:

**§ 2311. Length limitations on federally assisted highways**

**(a) Prohibition against certain length limitations on semitrailers and trailers**

No State shall establish, maintain, or enforce any regulation of commerce which imposes a vehicle length limitation of less than forty-eight feet on the length of the semitrailer unit operating in a truck tractor-semitrailer combination, and of less than twenty-eight feet on the length of any semitrailer or trailer operating in a truck tractor-semitrailer-trailer combination, on any segment of the National System of Interstate and Defense Highways and those classes of qualifying Federal-aid Primary System highways as designated by the Secretary, pursuant to subsection (e) of this section.

**(b) Nonapplicability of limitations to truck tractors; prohibition against overall length limitations on truck-tractor semitrailer or truck-tractor semitrailer, trailer combinations; prohibition against regulation of commerce prohibiting use of certain trailers and semitrailers**

Length limitations established, maintained, or enforced by the State under subsection (a) of this section shall apply solely to the semitrailer or trailer or trailers and not to a truck tractor. No State shall establish, maintain, or enforce any regulation of commerce which imposes an overall length limitation on commercial motor vehicles operating in truck-tractor semitrailer or truck tractor semitrailer, trailer combinations. No State shall estab-

lish, maintain, or enforce any regulation of commerce which has the effect of prohibiting the use of trailers or semitrailers of such dimensions as those that were in actual and lawful use in such State on December 1, 1982. No State shall establish, maintain, or enforce any regulation of commerce which has the effect of prohibiting the use of existing trailers or semitrailers, of up to twenty-eight and one-half feet in length, in a truck tractor-semi-trailer-trailer combination if those trailers or semitrailers were actually and lawfully operating on December 1, 1982, within a sixty-five-foot overall length limit in any State.

**(c) Prohibition by State of combination of truck tractor and two trailing units forbidden**

No state shall prohibit commercial vehicle combinations consisting of a truck tractor and two trailing units on any segment of the National System of Interstate and Defense Highways, and those classes of qualifying Federal-aid Primary System highways as designated by the Secretary pursuant to subsection (e) of this section.

Minor amendments to the STAA were recently passed. *See* Tandem Truck Safety Act of 1984, Pub.L. No. 98–554, 98 Stat. 2829.

**4.** **§ 4923. Length of vehicles**

**(a) General rule.**—Except as provided in subsection (b), no motor vehicle, including any load and bumpers, shall exceed an overall length of 40 feet, and no combination, including any load and bumpers, shall exceed an overall length of 60 feet.

Plaintiffs, interstate shippers and carriers who desire to use 53-foot truck trailers throughout Pennsylvania without any limitations on the length of the truck tractor, brought suit in the United States District Court for the Middle District of Pennsylvania claiming that the Pennsylvania legislation of 1983 is contrary to federal law and, therefore, violative of, *inter alia*, the supremacy clause and commerce clause of the federal constitution. Prior to the passage of the STAA, plaintiffs had legally operated, or made use of, 53-foot trailers in Pennsylvania. Pursuant to Pennsylvania law, however, these trailers were operated within a 60-foot overall length limit. Thus, the length of the trailer plus the tractor did not exceed 60 feet. Plaintiffs now desire to use 53–foot trailers both on and off the National Network without any restrictions as to overall length, and they contend that the STAA requires Pennsylvania to permit such operations. The parties entered into a stipulation of facts after which each side moved for summary judgment. Plaintiffs' motion was limited to their claim under the supremacy clause.

On April 12, 1984, the district court granted plaintiffs' motion for summary judgment.[5] The district court held, first, that Pennsylvania's 60-foot overall length limitation conflicts with the STAA and therefore was improper, even as applied to vehicles with trailers longer than 48 feet that are operating under the grandfather

> **(b) Exceptions.**—The limitations of (a) do not apply to the following:
>
> .      .      .      .      .
>
> (5) A combination designed and used exclusively for carrying motor vehicles if the overall length of the combination and load does not exceed 65 feet.
>
> (6) Any combination consisting of a truck tractor and one or two trailers, when driven as described in section 4908 (relating to operation of certain combinations on interstate and certain primary highways), provided that, except when being operated as a part of a combination of a tractor and single trailer not exceeding an overall length of 60 feet, the length of a single trailer shall not exceed 48 feet and the length of each double trailer shall not exceed 28 feet.

5. Prior to the district court's decision, a United States District Court for the Northern District of

clause of the STAA, 49 U.S.C. § 2311(b). The court then held that the provision in subsection (b) of section 411 of the STAA (49 U.S.C. § 2311(b)), prohibiting overall length limitations, applied to all roadways within a state, not just those constituting the National Network. In so holding, the court declared sections 4923(a) and 4923(b)(6) of the Pennsylvania Motor Vehicle Code violative of the supremacy clause. The district court, and subsequently this court, denied a motion for partial stay pending appeal.

Subsequent to the district court's decision, the Federal Highway Administration (FHWA) promulgated a "final rule" which interpreted the STAA in the manner advocated by the defendants herein and contrary to the decision of the district court. The FHWA interpreted the STAA to mean that states could impose overall length limits on the National Network for tractor-trailers with trailers longer than 48 feet, if the states imposed overall length limits prior to enactment of the law. Moreover, the FHWA concluded that states were free to impose any overall length limit on highways other than those constituting the National Network. *See* 49 Fed.Reg. 23,302 (1984). Subsequent to this FHWA interpretation, the plaintiffs filed a motion to remand for the purpose of joining the FHWA and its officials. This motion has since been withdrawn.[6]

Florida came to the same conclusion as the district court in the instant case. *See United States v. Florida*, No. TCA 83–7333 (N.D.Fla. Mar. 2, 1984) (holding that state law imposing overall length restrictions on any road was contrary to STAA).

6. Plaintiffs moved for remand of this matter in order to (1) afford the FHWA an opportunity to defend its rule, and (2) promote judicial economy. By remand, it was hoped that the FHWA could be added as a party and that the entire matter could be disposed of by two "trials" and one appeal rather than two trials and presumably two appeals.

The FHWA, however, subsequently indicated that it did not desire to defend its rules in this proceeding. Furthermore, the hearing on the motion for remand was consolidated with the merits of this appeal. Thus, neither of the rea-

## II.

The first issue before this court is whether, under the STAA, states can impose overall length limits on tractor-trailers with trailers longer than 48 feet, if the states imposed overall length limits prior to the enactment of the law. In essence, we are required to decide whether the "grandfather clause" of the STAA permits states to enforce length limitations in cases where the clause is relied upon. The defendants' position is that the grandfather clause was not intended to broaden the situations in which trailers longer than 48 feet can be operated. In the defendants' view, therefore, the plaintiffs are entitled to operate 53-foot trailers only as they were operated in Pennsylvania before the passage of the STAA, that is, in combination with tractors of seven feet or less. The plaintiffs rejoin that the STAA preempts any state regulation of overall length as such. They further urge that the grandfather clause requires Pennsylvania, which previously allowed certain 53-foot trailers to operate on its highways, now to allow trailers of this length to operate without regard to the overall length of the combinations of which the trailers are a part.

The "grandfather clause" provides that "[n]o State shall establish, maintain, or enforce any regulation of commerce which has the effect of prohibiting the use of existing trailers or semi-trailers, of such dimensions as those that were in actual and lawful use in such State on December 1, 1982." 49 U.S.C. § 2311(b). On December 1, 1982, Pennsylvania had in effect a 60-foot overall length limitation. After the passage of the STAA, Pennsylvania amended its vehicle code and abolished the pre-existing 60 foot limitation for combination vehicles operating on the National Network so long as the length of a single trailer did not exceed 48 feet (and the length of each twin trailer did not exceed 28 feet). The defendants argue that if a trailer is greater than 48 feet long, thus essentially requiring reliance on the grandfather clause, then the 60 foot overall length limitation is lawful and applicable. We see no merit to this argument.

■ When interpreting a statute, the starting point is of course the language of the statute itself. *See American Tobacco Co. v. Patterson,* 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982). If the language is clear and unambiguous, and there is no "clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Product Safety Commission v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980).

■ In the instant case, the federal statute is clear in its prohibition of overall length limits as applied to single-trailer combinations. The relevant provision unambiguously requires that "[n]o State shall establish, maintain or enforce any regulation of commerce which imposes an overall length limitation on commercial motor vehicles operating in truck-tractor semitrailer or truck tractor semitrailer, trailer combinations." 49 U.S.C. § 2311(b). This provision speaks of no exception to the broad and clear prohibition of overall length limitations.[7] Even if the defendants' position were accepted and Pennsylvania's 60-foot overall length limitations were seen as a

---

sons noted above remained valid and plaintiffs withdrew the motion.

**7.** The only exception to be found anywhere in the statute appears in the last sentence of 49 U.S.C. § 2311(b). This sentence provides as follows:

No State shall establish, maintain, or enforce any regulation of commerce which has the effect of prohibiting the use of existing trailers or semitrailers, of up to twenty-eight and one-half feet in length, in a truck tractor-semitrailer-trailer combination if those trailers or semitrailers were actually and lawfully operating on December 1, 1982, within a sixty-five-foot overall length limit in any State.

This exception, however, is very narrow, applies only to double trailers, and is crafted to protect those fleets, in particular a fleet with over 5,000 such vehicles, that used 28-½ foot doubles trailers as opposed to the 28 foot trailers established as the uniform standard doubles trailer by 49 U.S.C. § 2311(a). *See* H.R.Rep. No. 555, 97th Cong., 2d Sess. 23, 24, *reprinted in* 1982 U.S. Code Cong. & Ad. News 3639, 3661-62.

"condition" that existed prior to the STAA's enactment for the operation of long trailers, any such "condition" is now clearly outlawed by the STAA and does not continue today under the grandfather clause. Thus, to currently impose such a condition on vehicles traveling on the National Network violates the supremacy clause of the federal constitution.

■■■ Nothing in the language of the grandfather clause itself changes this result. The grandfather clause speaks to *trailer* size limitations that were in effect before Congress enacted the federal law. The clause indicates that, although the new federal law allows a law mandating a 48-foot maximum length trailer, a state that had previously allowed a trailer length in excess of 48 feet cannot now reduce and bring the size within that limitation. Prior to the federal law, Pennsylvania had an overall length limitation law in effect on combination tractor-trailers—a type of law that is now prohibited. This law permitted, in practical terms, a 53-foot trailer when used with a 7-foot long tractor. Under the terms of the grandfather clause of the STAA, Pennsylvania may not now prohibit the use of trailers on the National Network that are up to 53 feet in length. Although Pennsylvania had no statute permitting trailers 53 feet in length, its interpretation of its overall length limitation law permitted such a practice. The language of the STAA grandfather clause is not predicated on state statutory provisions specifically permitting trailers in excess of 48 feet in length, but upon whether trailers "of such dimensions ... were in actual and lawful use" in the state on December 1, 1982. Fifty-three foot trailers "were in actual and lawful use" in Pennsylvania on December 1, 1982. Thus, the STAA grandfather clause requires that Pennsylvania, given the practical effect of its previous law, allow 53-foot trailers on the National Network, not that it continue to allow, as Pennsylvania argues, 53-foot trailers only as part of 60-foot overall length tractor-trailer combinations. Regardless of what Pennsylvania's or our views may be concerning the operation and safety of trailers of such length, trailers up to 53 feet in length must be allowed on the National Network in Pennsylvania in light of the previous practice even if pulled by a tractor of such length that the combination exceeds 60 feet.

This reading is in conformity with the legislative history of the STAA. In including within the federal statute a prohibition against the use of overall length limitations, Congress apparently desired to reduce the use of the dangerous "short tractors" that had been developed in response to the various state overall length limitation laws.[8] This safety concern is plainly expressed in a report of the Senate Committee on Commerce, Science, and Transportation. *See* S.Rep. No. 298, 97th Cong., 1st Sess. 2 (1981).[9] To continue to impose

---

**8.** The short tractor was developed so that most of the allowable length of the combination would be in the cargo-carrying *trailer.* These short tractors—e.g., the "cab over engine" variety—provide less protection for the driver than the longer "cab behind engine" variety.

**9.** In relevant part, the report states:

While the prohibition on regulation of the overall length of trucks may seem to be a major change, as a practical matter it will not result in significantly larger trucks than are on the road today and it will assure that safety will not be jeopardized by undue restrictions on the power unit. The great bulk of truck length is contained in the cargo carrying unit that is still under regulation by the States. *By focusing on trailer-size limitations only, there is no incentive to squeeze the*

*truck cab down to an unsafe size in order to meet an overall length requirement.* Moreover, the driver can assure that there is sufficient separation between the tractor and the trailer to provide optimum control of the vehicle and minimum weight on the front steering axle. With an overall length limit, often trucks must either be configured in a way that is less safe or else give up valuable cargo space to allow for more safe driving conditions. In the future, truckers will not have to face that dilemma.
S.Rep. No. 298, 97th Cong., 1st Sess. 2 (1981) (emphasis added). It is true that this report concerned a bill, S. 1402, 97th Cong., 1st Sess. (1981), that was never actually passed. Nevertheless, the grandfather clause and overall length limit contained in the Senate version were ultimately incorporated into the House

overall length limits on the many trucks relying on the grandfather clause of the STAA would result in the continued use of short tractors and a frustration of one of the purposes Congress had for passing the STAA.

██ As noted earlier, the FHWA interpretation is contrary to our analysis of this issue. This, however, does not change the result. It is true that the interpretation of the agency charged with the implementation of a statute is generally accorded substantial deference. *See Blum v. Bacon,* 457 U.S. 132, 141, 102 S.Ct. 2355, 2361, 72 L.Ed.2d 728 (1982); *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 492, 801, 13 L.Ed.2d 616 (1965). The question before this court, however, is a matter of pure statutory construction. In such a case, agency expertise is not controlling; the question is one which the courts are relatively more able to answer. *See Barlow v. Collins,* 397 U.S. 159, 166, 90 S.Ct. 832, 837, 25 L.Ed.2d 192 (1970); *Cleary v. United States Lines,* 728 F.2d 607, 610 n. 6 (3d Cir.1984); *Hi-Craft Clothing Co. v. NLRB,* 660 F.2d 910, 914–15 (3d Cir.1981).

### III.

██ The second issue that this court must consider is whether § 411 of the STAA, 49 U.S.C. § 2311, prohibits the states from enforcing overall length limitations on roads which are not a part of the National Network. A review of section 2311 suggests that it was meant to apply only to the National Network, a conclusion supported by the very title of the section: "Length limitations on federally assisted highways." The plaintiffs, however, argue that only subsections (a) and (c) of section 2311 mention the National Network, and thus subsection (b), which is the subsection that contains the prohibition against overall length limitations, should not be seen as limited to only that system of roads. The plaintiffs admit that the first sentence of subsection (b) refers to subsection (a), which, as just noted, refers to the National Network. The plaintiffs, however, maintain that the remaining provisions in subsection (b), including the overall length limit prohibition, should be read as separate sentences that address state regulations on *any* highway. We do not agree.

It is true that subsections (a) and (c), and not (b), specifically refer to the National Network. Subsection (a) prohibits a state from imposing a length limitation of less than 48 feet for a single trailer operating on the National Network. Subsection (c) forbids a state from prohibiting the operation of twin trailers on the National Network. This does not mean, however, that the absence, in subsection (b), of an explicit reference to the National Network makes the subsection applicable to all roads. Rather, we read that subsection as essentially clarifying, and placing limits on, the more substantive provisions contained in subsections (a) and (c).[10] For example, the first two sentences of subsection (b),

---

bill, H.R. 6211, 97th Cong., 1st Sess. (1981), that was adopted and passed into law. *Cf.* H.R.Conf. Rep. No. 987, 97th Cong., 2d Sess. 132–34, *reprinted in* 1982 U.S.Code Cong. & Ad. News 3692, 3713–15. Since the Conference Committee report, *see id.,* and the House report, *see* H.R.Rep. No. 555, 97th Cong., 2d Sess. 22–25, *reprinted in* 1982 U.S.Code Cong. & Ad. News 3639, 3660–63, do little more than paraphrase the statute, it is not unreasonable to make reference to the Senate report that considered the provisions.

**10.** This approach of viewing subsection (b) as essentially only adding a "gloss" to the discussion of vehicle lengths and allowable combinations presented in subsections (a) and (c), helps explain the wording of 49 U.S.C. § 2311(e)(1). This subsection provides that "[t]he Secretary shall designate as qualifying Federal-aid Primary System highways *subject to the provisions of subsections (a) and (c)* of this section those Primary System highways that are capable of safely accommodating the vehicle lengths set forth therein." (Emphasis added.) The absence of any mention of subsection (b) is, according to the approach we adopt, due to subsections (a) and (c) being the only provisions that have a "direct" impact. Any impact that subsection (b) has is "through" subsections (a) and (c)—either by way of clarification (i.e., the "overall length limitation" provisions) or exception (i.e., the grandfather clause). This same analysis explains the similar emphasis on subsections (a) and (c) found in the recent amendments to the STAA. *See* Tandem Truck Safety Act of 1984, Pub.L. No. 98–554, § 102, 98 Stat. 2829, 2829.

the two sentences most relevant to the present discussion, are properly seen as clarifying the reference to length limits established under subsection (a) so as to limit its application only to the trailer and not to the overall vehicle. The language of these two sentences is as follows:

Length limitations established, maintained, or enforced by the States under subsection (a) of this section shall apply solely to the semitrailer or trailer or trailers and not to a truck tractor. No State shall establish, maintain, or enforce any regulation of commerce which imposes an overall length limitation on commercial motor vehicles operating in truck-tractor semitrailer or truck tractor semitrailer, trailer combinations.

49 U.S.C. § 2311(b). The first sentence, by itself, implicitly prohibits the imposition of overall length limits. Because limitations may apply only to the semi-trailer and not the tractor, there can be no limitation imposed on the overall combination of the two. The implication of this provision is clear, though not directly stated. The second sentence does state it directly: it prohibits any "overall length limitation." The latter sentence, then, would appear to be merely a clarification of what is contained in the first sentence—a sentence which by its very terms (that is, by virtue of the reference therein to subsection (a)) applies only to the National Network.

That the overall length limitation prohibition is applicable only to the National Network is further supported by the argument that 49 U.S.C. § 2312 would be rendered superfluous if section 2311(b) were seen as applying to all roads. Section 2312 reads as follows:

No State may enact or enforce any law denying reasonable access to commercial motor vehicles subject to this chapter between (1) the Interstate and Defense Highway System and any other qualifying Federal-aid Primary System highways, as designated by the Secretary, and (2) terminals, facilities for food, fuel, repairs, and rest, and points of loading and unloading for household goods carriers.

49 U.S.C. § 2312. This provision is not limited to twin trailers. Rather, it applies to all "commercial motor vehicles subject to this chapter," including the semi-trailer combinations permitted under section 2311. If Congress, in section 2311(b), had already required states to permit these vehicles on all of their public highways, there would clearly be no need for section 2312. Thus, given the existence of section 2312, we believe that 49 U.S.C. § 2311 should not be seen as applying to all roads.

■ Our reading of the statute is not contrary to legislative intent. We do not believe that, in enacting this legislation, Congress intended to completely deprive the states of the power to regulate vehicle lengths, even as to roadways off the National Network. In particular, it is difficult to believe that Congress desired to preempt state vehicle length laws as to every street, road, and alleyway in a state, thus potentially subjecting narrow streets in densely populated areas and narrow country roads to tractor-trailers seventy feet or more in length. One of the main purposes of Congress in passing the STAA was to enhance interstate commerce. See H.R.Rep. No. 555, 97th Cong., 2d Sess. 23, reprinted in 1982 U.S. Code Cong. & Ad.News 3629, 3661. This is clearly accomplished by requiring all states to permit the operation of 48-foot trailers and twin trailers on any segment of the National Network. Limiting the application of the statute to the National Network should not in any way impede interstate travel inasmuch as the Network clearly includes all interstate highways and section 2312 provides for reasonable access to terminals and facilities for food, fuel, repairs, and rest off the Network as well as points of loading and unloading for household goods carriers. Futhermore, this interpretation allows for the use of the safer "long" tractors on the National Network, although it is true that the shorter tractors may still need to be used for general travel off the National Network in Pennsylvania. Congress, however, was concerned with long distance

hauling and meant to deal only with the National Network, leaving the regulation of tractor-trailer size off this Network to the discretion of the states. This is reflected in the legislative history with respect to section 2312 in which the House report states that "this provision [§ 2312] is not intended to preempt a State's reasonable exercise of its police powers with respect to safeguarding public safety on roads within the area of its jurisdiction." H.R. Rep. No. 555, *supra*, at 3662.

The political dynamics of the passage of the Act are also worthy of note. As suggested above, one of the purposes of Congress in passing the STAA was to improve the productivity of truckers by establishing more uniform weight and length limits on federal roads across the country. The apparent *quid pro quo* for this beneficial legislation was a five cent per gallon increase in the gasoline tax and the imposition of higher fees and taxes on heavy trucks.[11] A reading of the legislation indicates that the lion's share of these additional taxes inured to the benefit of the National Network highway system, and not otherwise to the benefit of the states. *See* H.R. Rep. No. 555, *supra*, at 3639–42. This provides additional support for our conclusion that Congress intended that the Act's new vehicle weight and size provisions be limited to the National Network.[12]

### IV.

In summary, we agree with the district court that the STAA's prohibition against

overall length limitations on semi-trailer combinations using the National Network is unequivocal and prevents the use of such limitations even with respect to trucks operating under the grandfather clause. Accordingly, that portion of the district court's judgment will be affirmed. On the issue of whether 49 U.S.C. § 2311(b) applies to all roads or only those constituting the National Network, however, we conclude that the provision is applicable only to the Network. As to this second issue, the judgment of the district court will be reversed and the case remanded for consideration of the plaintiffs' remaining claims.[13]

Each side to bear its own costs.

---

**11.** *See* H.R.Rep. No. 555, *supra*, at 3661.

As proposed by the Reagan Administration, the new program would include higher fees and taxes on heavy trucks used by commercial trucking companies. In return, there would be an attempt to improve the productivity of truckers by establishing uniformly higher truck weight and length limits on *Federal* roads across the country. A new 80,000-pound minimum would be in effect.

N.Y. Times, Nov. 30, 1982, at B10, col. 1 (emphasis added).

**12.** Our conclusion that section 2311(b) is applicable only to the National Network is consistent with the FHWA's similar interpretation. *See* 49 Fed.Reg. 23,302–23,329 (1984) ("final rule" ef-

fective June 5, 1984). As noted earlier, this interpretation is not in any way controlling here, but we mention it in the interest of completeness. *Cf. Barnes v. Cohen*, 749 F.2d 1009, 1016 (3d Cir.1984).

**13.** We have concluded that Pennsylvania's application of an overall length limitation to vehicles off the National Network does not violate the supremacy clause. The plaintiffs' complaint, in addition to raising the supremacy clause issue, alleged that the vehicle length provisions of the Pennsylvania Motor Vehicle Code were violative of the commerce clause, the fourteenth amendment, and 42 U.S.C. § 1983. The district court did not reach these latter issues.