825 F.2d 308
 CONTINENTAL CAN COMPANY, INC., a Delaware Corporation, Dart
Transit Company, a Minnesota Corporation, et al.,
Plaintiffs-Appellants,
v.
Leonard MELLON, Executive Director of the Florida Department
of Highway Safety, Robert Martinez, The Honorable
Governor of State of Florida, et al.,
Defendants-Appellees.
 No. 86-3563.
 United States Court of Appeals,
Eleventh Circuit.
 Aug. 21, 1987.
 
 Ervin, Varn, Jacobs, Odom & Kitchen, Wilfred C. Varn, Thomas M. Ervin, Jr., Robert M. Ervin, Jr., Tallahassee, Fla., DeWitt, Sundby, Huggett, Schumacher & Morgan, John D. Varda, John H. Lederer, Madison, Wis., for plaintiffs-appellants.
 Franz E. Dorn, Dept. of Transp., Tallahassee, Fla., for defendants-appellees.
 Appeal from the United States District Court for the Northern District of Florida.
 Before RONEY, Chief Judge, HATCHETT, Circuit Judge, and TUTTLE, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 This case involves the question of whether a Florida statute violates a federal statute which prohibits states from imposing rules which effectively prohibit trailers of a length in lawful use in the state before December 1, 1982. The district court held the Florida statute did not violate the federal prohibition. We reverse.
 
 
 2
 Applicable Florida law, prior to 1983, set a maximum total length of 55 feet for tractor-trailer combinations. Fla.Stat. Sec. 316.515(3)(a) (1981). Florida's Department of Transportation (FDOT) was also authorized to issue discretionary permits on an annual basis, pursuant to section Fla.Stat. Sec. 316.550 (1976). In 1982, Congress entered the area of highway regulation by enacting the Surface Transportation Assistance Act of 1982 (STAA), 49 U.S.C.A. Sec. 2301 et seq., which states in pertinent part: "No State shall establish, maintain, or enforce any regulation of commerce which has the effect of prohibiting the use of trailers or semitrailers of such dimensions as those that were in actual and lawful use in such state on December 1, 1982." 49 U.S.C.A. Sec. 2311(b). This case turns on the proper interpretation of that statute.
 
 
 3
 After STAA became law, Florida, in 1983, enacted legislation which imposed a trailer length of 48 feet. Fla.Stat. Sec. 316.515(3)(b) (1983). The statute prohibits FDOT from issuing any permit for a trailer exceeding 48 feet in length unless the trailer was (1) used to transport divisible loads, (2) registered in Florida according to statute, and (3) operating on the highways of Florida on December 1, 1982 by virtue of a permit issued in accordance with section 316.550. If FDOT issued such permit, the trailer could continue for the remaining life of the vehicle or until January 1, 1990, whichever is sooner, so long as the trailer met the statutory requirements relating to vehicle equipment and safety.
 
 
 4
 Plaintiffs are carriers and shippers who would either operate 57' 6" trailers in Florida to move light and bulky freight or would directly benefit from their use.
 
 
 5
 The decision that the federal statute's reference to "actual and lawful use" does not apply to vehicles which were operating with permits under Fla.Stat. Sec. 316.550 (1976) is contrary to normal use of those words. Certainly the permitted vehicles were being lawfully operated in Florida on December 1, 1982. The legislative history of the statute reveals no intent contrary to the plain meaning of the words.
 
 
 6
 When faced with various suggested interpretations of a statute, it is appropriate for a court to look to legislative history as a guide to its meaning. Train v. Colorado Public Interest Research Group, 426 U.S. 1, 96 S.Ct. 1938, 48 L.Ed.2d 434 (1976); United States v. Noe, 634 F.2d 860, 861 (5th Cir. Unit B 1981) (binding precedent under Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir.1981) (en banc )).
 
 
 7
 The legislative history supports the view that if a State had previously issued permits, it would have to continue to allow permits under the same guidelines in effect on December 1, 1982.
 
 
 8
 The Committee also adopted an amendment to section 3 that would prohibit the various States from rolling back the clock on recent gains in motor vehicle productivity. While the Committee expects that no State would seek to impose regulations more restrictive than currently exist, there is a possibility of such action in the future. Any such decision would jeopardize the increases in productivity and fuel savings gained by the legislation. Hence the bill provides that States may not prohibit the use of trailers or semi-trailers of such dimensions as were in actual and lawful use in those States on December 1, 1981 [changed in final bill to 1982].
 
 
 9
 Most State laws setting truck length limitations also provide for larger trucks and trailers under special circumstances on an annual permit basis. This provision in the bill simply requires States to continue to allow such vehicles under at least the same ground rules as were in effect on December 1, 1981. It does not force States that have only allowed larger trailers by permit in the past to allow them on an across-the-board basis in the future without special permit. Rather, it is simply an assurance that at least the status quo will be maintained in each State.
 
 
 10
 S.Rep. No. 298, 97th Cong., 1st Sess. 3 (1981).
 
 
 11
 The legislative history emphasizes the need to maintain the dimensions and ground rules for obtaining permits for longer trucks that existed at the time STAA was enacted by Congress. Prior to July 1, 1983, FDOT on a discretionary basis allowed carriers to operate semi-trailers from 48' to 57' 6" under permit. The statutory guidelines, or "ground rules" as referred to in the legislative history are set forth in Fla.Stat. Sec. 316.550 (1976):
 
 
 12
 The Department of Transportation, with respect to highways under its jurisdiction, or a local authority, with respect to highways under its jurisdiction, may, in its discretion and upon application and good cause shown therefor that the same is not contrary to the public interest, issue a special permit in writing authorizing the applicant to operate or move a vehicle or combination of vehicles of a size or weight of vehicle or load exceeding the maximum specified in this chapter, or otherwise not in conformity with the provisions of this chapter, upon any highway under the jurisdiction of the authority issuing such permit and for the maintenance of which the authority is responsible.
 
 
 13
 Thus, the FDOT could issue "in its discretion and upon application and good cause shown therefore that the same is not contrary to the public interest," a permit for the actual and lawful use in Florida of vehicles the size plaintiffs wish to operate. The statute passed in 1983 takes this discretion out of the FDOT except for vehicles registered in Florida, which were operating under a permit on December 1, 1982.
 
 
 14
 These changes and their subsequent impact on plaintiff's vehicles do not conform with STAA as evidenced by the legislative history. Congress was clearly aware of the special permit system that was in place in many States, and did not define "lawful use" in a manner that would treat statutory lengths and permit lengths differently. S.Rep. No. 298, 97th Cong., 1st Sess. 2 (1981).
 
 
 15
 The suggestion that the Federal Highway Administration, the administrative agency charged with implementing STAA, has interpreted the clause to not include vehicles with these permits is unconvincing. The regulation preferred to:
 
 
 16
 If on December 1, 1982, State length limitations applied only to the overall length of the vehicle combination, ... that State shall not adopt a semitrailer or trailer length limit less than the length of equipment that legally operated in that State without special permit on December 1, 1982.
 
 
 17
 23 C.F.R. Sec. 658.13(c)(2) (1985).
 
 
 18
 The interpretation of the agency that is charged with the responsibility of implementing the statute is generally accorded significant weight. See Blum v. Bacon, 457 U.S. 132, 102 S.Ct. 2355, 72 L.Ed.2d 728 (1982); Udall v. Tallman, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965).
 
 
 19
 This argument seeks sustenance from the fact that the permit section in Fla.Stat. Sec. 316.550 (1981) is entitled, "Operations not in conformity with law; special permits." That section provides, however, that:
 
 
 20
 The Department of Transportation may issue blanket permits for not more than 36 months. The department may charge an annualized fee for blanket permits not to exceed $500. Every such permit shall be carried in the vehicle or combination of vehicles to which it refers and shall be open to inspection by any police officer or authorized agent of any authority granting such permit. No person shall violate any of the terms or conditions of such special permit.
 
 
 21
 There is simply nothing to indicate that the agency in referring to "special permits" was including the three-year blanket permits which Florida calls "special permits." The State offers no legislative history to support this reading of the statute. It would be unreasonable to construe a federal statute's meaning by focusing on the statutory titles employed by individual State legislatures. In any event, an agency interpretation cannot change the meaning of a statute and the construction of a statute is a matter which the courts are relatively more able to answer. See Barlow v. Collins, 397 U.S. 159, 166, 90 S.Ct. 832, 837, 525 L.Ed.2d 192 (1970); National Freight, Inc. v. Larson, 760 F.2d 499, 505 (3d Cir.1985).
 
 
 22
 The State and the district court express concern that acceptance of plaintiff's interpretation of the federal statute will in effect create a new general length limit in Florida, that being a length as long as the longest truck ever operated by permit in Florida. There is no indication that Congress intended this to be the result nor will this decision create that result. STAA keeps the States from prohibiting dimensions of vehicles that previously legally operated. It does not remove the power of the States to limit use, if use was previously limited. In the case of section 316.550 permits, Florida had imposed numerous restrictions on trailers operating with permits, such as the designated hours the trucks could travel, the routes the trucks had to travel, and safety features necessary. Florida can continue to impose the same restrictions as previously imposed and will be justified in doing so under STAA if they are operating under the same ground rules that existed prior to passage of STAA.
 
 
 23
 The FDOT refused to renew any permits for trailers that were not actually registered in Florida before December 1, 1982 on the ground that it was prohibited by Fla.Stat. Sec. 316.515(3)(b) from doing so. That state statute conflicts with provisions of the Federal Surface Highway Act and FDOT's enforcement of that law infringes on rights secured by Federal law.
 
 
 24
 Accordingly, we reverse and remand for further proceedings consistent with this opinion.
 
 
 25
 REVERSED and REMANDED.