**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 98-41331

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

NATHANIEL HOWARD THOMAS; JOHNNY MARIO URBANO; and ISRAEL ABEL
TORRES, also known as "PEE WEE,"

Defendants-Appellants.

Appeals from the United States District Court
for the Eastern District of Texas
(4:98-CR-14 )

July 5, 2000

Before REYNALDO G. GARZA, JOLLY, and HIGGINBOTHAM, Circuit Judges.

PER CURIAM[1]:

I.      FACTUAL AND PROCEDURAL HISTORY

This is a direct appeal from final judgments of convictions and sentences in the United

States District Court for the Eastern District of Texas.  The three Appellants named in this case

were tried together and charged in a 114-count indictment alleging a drug distribution conspiracy

involving substantial amounts of drugs sold in the area of McKinney, Texas.  Several other

individuals were also indicted but were tried as a separate group in a trial preceding the

Appellants' trial.  All of the indicted individuals were charged with conspiracy to possess

controlled substances in violation of 21 U.S.C. § 846 (count one).[2]  Thomas was also charged

---

[1] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

[2] The controlled substances allegedly included: over 7 kilograms of crack cocaine, over 20
kilograms of powder cocaine, over 3 kilograms of methamphetamine, and over 600 pounds of

with possession with intent to distribute and distributing crack cocaine in violation of 21 U.S.C. § 841(a) (counts 52-53) and with distributing crack cocaine within 1,000 feet of a playground in violation of 21 U.S.C. § 860 (counts 107-108). Torres was also charged on identical charges (possessing with intent to distribute in counts 54-55, and distributing within 1000 feet of a playground in count 109), as well as a forfeiture count involving currency (count 114). Urbano was also charged with using a communication facility to commit a controlled substance offense, the sale of methamphetamine, in violation of 21 U.S.C. § 843 (count 60). The Appellants were additionally charged with aiding and abetting in each of the offenses in violation of 18 U.S.C. § 2.

A pretrial conference was held April 30, 1998, at which time the district court announced that due to the large number of defendants, the case would be held in two trials. Jury Selection for Thomas, Torres, Urbano, and three other co-defendants was held on May 26, 1998. The latter three co-defendants entered guilty pleas thereafter. The case against the three Appellants in this case proceeded to trial on June 8, 1998. Prior to submission to the jury, the Government moved to dismiss counts 55 and 109 due to the unavailability of a witness. On June 11, 1998, the jury returned a guilty verdict on all remaining counts charged.

Each Appellant now appeals his conviction on various grounds. Only Torres challenges his sentence. Based on his total offense level and criminal history, the guideline range for Torres's imprisonment was from 188 to 235 months. However, because Torres had several prior felony drug convictions, the minimum sentence was life. Torres was sentenced to life imprisonment on count one and to 188 months on count 54, to be served concurrently. Thomas was sentenced to 235 months imprisonment on each of five counts, all to be served concurrently. Urbano was sentenced to 151 months on count 1 and 48 months on count 60, to run concurrently.

II      DISCUSSION

A.      Thomas

1.      Outside influence on the jury.

marijuana.

We review the district court's handling of complaints of outside influence on a jury under an abuse of discretion standard. *See United States v. Ramos,* 71 F.3d 1150, 1153-54 (5th Cir. 1995); *United States v. Jobe*, 101 F.3d 1046, 1058 (5th Cir. 1996).

A juror reported the following incident to the court. The juror was standing outside a restaurant and innocently initiated contact with a nearby stranger by asking whether the restaurant was crowded. During this brief contact, the stranger asked the juror whether she was involved in the trial and, after the juror responded affirmatively, the stranger mentioned that he was friends with "those people," which presumably referred to the defendants. The juror immediately ended the contact, left the stranger behind, and went into the restaurant. There was no further contact between the juror and the stranger. The juror subsequently avoided the stranger but later saw him in the courtroom. After the juror brought the incident -- which the juror described as "rather uneventful" -- to the court's attention, the trial judge discussed the incident with the juror in his chambers without alerting counsel for either side.

Thomas argues that the failure to hold a hearing regarding this incident deprived him of the opportunity to prove the possibility of juror-bias and thereby violated his Sixth Amendment right to a fair and impartial jury. However, we find that the district court was within his discretion to handle such a minor incident without an evidentiary hearing. In *United States v. Sylvester*, 143 F.3d 923, 932 (5th Cir. 1998), we explained that the court must balance the probable harm resulting from the emphasis a hearing would place upon the alleged misconduct against the likely extent and gravity of the prejudice generated by the alleged misconduct. We further explained that "only when the court determines that prejudice is likely should the government be required to prove its absence." *Id.* at 934. In this case, where the juror initiated a minor contact which was not likely to relate in any prejudice, a hearing is not only unnecessary but in fact could only draw unnecessary attention to an otherwise trivial event. We therefore hold that the district court did not abuse its discretion in concluding that there was no credible allegation of jury tampering and juror prejudice, therefore it was not necessary to hold a hearing involving all parties.

2.      Severance

We review denial of severance and  new trial motions for an abuse of discretion.  *United States v. Posada-Rios*, 158 F.3d 832, 836 (5th Cir. 1998) (citations omitted).  To show reversible error, Thomas must point to "clear, specific and compelling evidence that resulted in an unfair trial."  Additionally, Thomas must show that he was so prejudiced that the district court could not provide protection and that such prejudice outweighed the interest in judicial economy.  *See United States v. Manges*, 110 F.3d 1162, 1174 (5th Cir. 1997).  Generally, severance should be granted only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt.  *United States v. Tencer*, 107 F.3d 1120, 1132 (5th Cir. 1997).  Experience shows that a severance is only granted in very unusual circumstances.  The general rule is that indicted co-conspirators should be tried together.  *Id.*

Thomas was tried with Urbano, a co-conspirator and cooperating government witness.  At trial, Urbano admitted the existence of a conspiracy, but argued for acquittal because he alleged that the government reneged on his cooperation deal.  However, there are several reasons Thomas fails to show compelling evidence of an unfair trial.  Urbano's testimony did not implicate Thomas as a member of the conspiracy.  Thomas was thus free to argue that he was not involved in the conspiracy and the jury was free to make an independent determination of guilt or innocence.  Moreover, Urbano's counsel complied with the court's instruction never to mention Thomas and the jury instructions contained admonitions about considering the evidence against each defendant separately.  The court took all reasonable steps to protect Thomas.  We cannot say that the district court failed to provide adequate protection or that any prejudice outweighed the interest in judicial economy.  In sum, these factors do not rise to the level of clear and compelling evidence of an unfair trial.[3]  We therefore affirm.

---

[3] The only incident of possible prejudice cited by Thomas involved a witness's note regarding a list of individuals alleged to be involved with drugs, which was arguably exculpatory because it did not include Thomas's name, but which was excluded because it contained Urbano's name.

3.    Sufficiency of the Evidence

Thomas challenges his convictions for the drug conspiracy, possession of crack cocaine with the intent to distribute, and distribution of crack cocaine within 1,000 feet of a playground. In reviewing a sufficiency of the evidence challenge, this court examines the evidence and all reasonable inferences drawn therefrom in the light most favorable to the verdict and will affirm the challenged verdict if a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  The jury is free to choose from among all reasonable inferences and the jury has sole responsibility for determining the credibility of witnesses.  *United States v. Dean*, 59 F.2d 1479, 1484 (5th Cir. 1995).

Thomas argues that the evidence, even when viewed favorably to the verdict, is insufficient to support his conspiracy conviction pursuant to 21 U.S.C. § 846.  The elements of a drug conspiracy are: (1) the existence of an agreement between two or more persons to violate the narcotics laws; (2) knowledge of the conspiracy; and (3) voluntary participation in the conspiracy.  *United States v. Mitchell*, 31 F.3d 271, 274 (5th Cir. 1994).

Thomas argues that there was no direct evidence that he agreed to participate in bringing drugs into McKinney, storing and delivering the drugs, or sharing in the profits.  Thomas also argues that there was no evidence that the defendants in his trial ever met.  These arguments are unavailing.  Notably, the agreement may be tacit and the jury may infer its existence from circumstantial evidence.  *United States v. Thomas*, 12 F.3d 1350 (5th Cir. 1994).  Moreover, it is not necessary that the conspiracy involve Thomas's specific co-defendants.  *Posada-Rios*, 158 F.3d at 858.

A review of the record and briefs reveals sufficient evidence to sustain Thomas's

---

The exclusion of this list does not rise to the level of compelling evidence of an unfair trial because the list was of such marginal value as exculpatory evidence.  The witness against whom Thomas attempted to introduce the list did not even mention Thomas as an individual involved with drugs.   Additionally, Thomas had the opportunity to cross-examine this witness at trial to highlight that Thomas had not been listed as a person involved with drugs.

conspiracy conviction. There was evidence from which a jury could conclude that Thomas admitted that over a three year period he bought, and had delivered to him, crack cocaine from alleged members of the conspiracy. Several witnesses testified as to these transactions and a confidential government witness testified that he had bought drugs from Thomas. There is clearly sufficient evidence from which a rational juror could infer beyond a reasonable doubt that Thomas was an active member of the alleged drug conspiracy. Thomas's conspiracy conviction is therefore affirmed.

Next, Thomas challenges his conviction pursuant to 21 U.S.C. § 841(a)(1). We shall affirm if a jury could rationally find beyond a reasonable doubt that Thomas knowingly possessed crack cocaine with the intent to distribute. *United States v. Gonzales*, 79 F.3d 413, 423 (5th Cir. 1996). Such proof may depend on inference and circumstantial evidence. *Id.* at 423. Additionally, Thomas challenges his conviction under 21 U.S.C. § 860. In order to convict Thomas of this charge, the Government had to prove that he knowingly possessed crack cocaine within 1,000 feet of a playground. *United States v. Sparks*, 2 F.3d 574, 580 (5th Cir. 1993).

Viewed in the light most favorable to the verdict, the evidence was sufficient to prove that Thomas distributed crack cocaine and did so within 1,000 feet of a playground. A witness testified that he had bought crack cocaine from Thomas on numerous occasions. After this witness was arrested, he agreed to make controlled (undercover) buys from Thomas and did so on several occasions. At least one of these buys occurred at Thomas's residence. Additionally, there was sufficient evidence establishing that Thomas's house was within 1,000 feet of a playground. A McKinney city employee testified that aerial photographs of the city were digitized and entered into a computer program that produced maps that automatically set out radii of 1,000 feet. This map showed that Thomas's residence was within 1,000 feet of a playground. In addition, photographs of playground equipment near Thomas' residence were entered through the testimony of a police officer. In conclusion, there was sufficient evidence that Thomas distributed crack cocaine and did so within 1,000 feet of a playground. *See Sparks*, 2 F.3d at 580 (holding

**6**

that evidence was sufficient to support two defendants' convictions for possessing with intent to distribute crack within 1,000 feet of public school where city engineer identified aerial photograph of place of defendants' operations and testified that photograph demonstrated that place was within 1,000 feet of a school).

Thomas argues that the testimony of the confidential informant cannot support his conviction because it was inconsistent. Additionally, Thomas argues the informant's testimony regarding his undercover purchases should not be credited because they were motivated by his desire to have his case dismissed and because the controlled buys were not strictly enough controlled. Thomas implies that the informant could have used drugs obtained elsewhere.

These arguments are without merit. The "strictly controlled" argument is baseless because the evidence shows that the informant was searched before and after the drug sales. The only inconsistency in the informant's testimony is that he said he met the police officer at the police station after each of four controlled buys, while the officer testified that they met twice at the station and twice elsewhere. However, it is the province of the jury to determine whether this witness's testimony was credible even though he was a cooperating witness, and even though his testimony contained minor inconsistencies. *See United States v. Bailey*, 444 U.S. 394, 414 (1980). Thus, we affirm Thomas's conviction on the counts of possession with intent to distribute cocaine, and distribution within 1,000 feet of a playground.

4.     Evidentiary Rulings

Thomas argues that the district court erred with respect to the following evidentiary rulings: (a) the admission of a map depicting the distance between Thomas's residence and a playground; (b) exclusion of a jailhouse conversation; and (c) refusal to recess to allow Thomas's counsel to obtain an audiotape. We review a district court's evidentiary rulings for abuse of discretion. *United States v. Parks*, 68 F.3d 860, 867 (5th Cir. 1995). Even if an abuse of discretion is found, we apply the harmless error doctrine and will reverse only if a substantial right of the complaining party was affected. *United States v. Asibor*, 109 F.3d 1023, 1032 (5th Cir.

1997).

(a) <u>Admission of the map.</u>  The district court allowed the government to introduce into evidence a map derived from aerial photography but digitized to include red radii showing that Thomas's house was within 1,000 feet of a playground.  Thomas's counsel objected to the admission of this map on the basis that it was hearsay and that proper foundation had not been laid for its admission.

We find no abuse of discretion in the admission of the map, which the district court could have reasonably found was admissible as both a public record and an official publication made as part of the City's regularly conducted activity.  Moreover, the creator of the map testified as to its production, thereby providing sufficient authentication.  A drafting technician for the City, who was a professional in the use of the Autocad software used to produce such maps, testified that he had produced the map in question and had digitized it to add the red lines.  As a drafting technician, he regularly produced such maps in the ordinary course of his duties and in the ordinary course of the City's business.  In other words, the map in question was produced by a process regularly employed for the City's business and the map's creator testified in this regard.  As such, the map was demonstrated to have sufficient reliability and authenticity for admission.  *See, e.g.,* FED. R. EVID.. 803(6) (admitting, as exception to hearsay, records of regularly conducted activity);  FED. R. EVID. 803(8) (admitting, as exception to hearsay, data compilations of public offices); FED. R. EVID. 901- 902 (respectively noting that testimony by a witness with knowledge provides adequate authentication and explaining that certain public records and official publications are self-authenticating.)

Thomas complains that the production of the map was not solely the work of the drafting technician and that the technician had not "physically gone out and measured" anything.   The production of the map relied on aerial photos of the City of McKinney which had been digitized by a consulting firm some years earlier.  These factors do not constitute hearsay or a lack of foundation.  *See, e.g. United States v. Hutson*, 821 F.2d 1015, 1019-1020 (5th Cir. 1987)

**8**

(holding that bank's computer records were properly admitted, no requirement that witness laying foundation also have entered data into computer or be able to attest personally to its accuracy.) Rather they are factors relating to how much weight the jury should give to the map which were brought to the jury's attention during cross-examination. Thus, we are confident that no substantial right of Thomas was affected. We therefore affirm the admission of the map.

(b) Jailhouse conversation

The district court, after holding an evidentiary hearing, excluded statements overheard in jail which allegedly demonstrated that some of the Government's witnesses, including Anthony Grasso, had lied on the stand. Thomas contends that it was error to exclude these conversations and that he was denied his constitutional right to confront his accusers and to impeach their testimony. However, Grasso's testimony went to the scope of the conspiracy; his testimony directly implicated Torres and Urbano, but Thomas fails to point to any testimony by Grasso which mentions or directly implicates Thomas. Additionally, other alleged statements attributed to Grasso to the effect that some unspecified Government witness may have lied on the stand fails to directly implicate Thomas. It is therefore unclear that Thomas's substantial rights were affected by this ruling.

Moreover, the evidentiary hearing failed to expose clear evidence that anyone had lied. The district court heard the testimony of two prisoners claiming to have either conversed with Grasso or to have overheard his statements. Neither man testified that he heard Grasso admit that he had lied. One man testified that Grasso did not say that he lied, but that he would have to testify or face life imprisonment. The other man testified that Grasso has mentioned that other unspecified witnesses had lied and that Grasso would say what he had to say in order to get his time reduced. The district court did not abuse its discretion by excluding these conversations which: (a) did not impeach any specified witness who had directly implicated Thomas, (b) did not contain statements to the effect that Grasso had lied, and (c) merely raised issues regarding Grasso's motivation for testifying which were already before the jury.

**9**

(c) <u>Audio Tape</u>. Thomas argues that the district court abused its discretion when it refused to recess to allow Thomas's counsel to obtain an audio tape relating to the credibility of a Government witness. During the Government's case, officer Cogwell testified that Thomas had told him that he had purchased crack cocaine from two conspiracy members over 100 times. In an attempt to impeach Cogwell's testimony, Thomas wished to introduce a tape containing Thomas's statement that he never purchased anything from alleged conspiracy members. In other words, the denials on the tape are the same as those which the jury heard when Thomas took the stand. Therefore, even if the exclusion of the tape was error, Thomas was not prejudiced. Either way, the issue would have been the jury's determination of the credibility of Thomas's statements.

We have rejected Thomas's challenges regarding outside influence on the jury, the denial of severance, the sufficiency of the evidence, and the admission of evidence. Having found no error, Thomas's conviction and sentence are therefore affirmed.

B.      Urbano

Urbano objects to the exclusion of the afore-mentioned jailhouse conversations, but on different grounds. Urbano argues that Grasso's statement that several unspecified witnesses who had testified on the conspiracy charges had lied was broad enough to include witnesses such as Bobby Enloe and Shawn McPeak, who had testified as to their personal knowledge of Urbano's drug activities. After reviewing the record, we find the district court was within its discretion in excluding this evidence. Because Urbano can only speculate that Grasso's comments included Enloe and McPeak, the district court could reasonably conclude that the statement could only confuse the jury and result in undue delay. Thus, the district court's decision to exclude the evidence was reasonable. Alternatively, we note that any error would be harmless given Urbano's admissions of substantial drug dealing, at least one other witness's testimony regarding drug deliveries to Urbano's home, and cellular phone records showing phone and pager calls between Urbano and conspiracy ringleaders. Having found no error, Urbano's conviction is therefore affirmed.

**10**

C.      Torres

1.      Sentence Enhancement

Torres arrived at his trial in this case with multiple prior felony convictions for drug offenses. Torres was then convicted at this trial under 21 U.S.C. § 841(a)(1). On the basis of his prior felony convictions, he was sentenced to mandatory life imprisonment under 21 U.S.C. § 841(b)(1)(A), which provides that if a person commits a violation of § 841(a)(1) "after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release." Naturally, the purpose of the mandatory minimum is to deter future criminal conduct and target recidivism. *United States v. Hass*, 150 F.3d 443, 449 (5th Cir. 1998). Torres's case fits both the language and the purpose of the sentencing enhancement statute because, according to two of his drug-crime accomplices, Torres continued to deal drugs after his prior felony drug convictions became final and after he was released after serving time for those convictions.

Torres now challenges his sentence enhancement. We review the district court's application of the Sentencing Guidelines *de novo* and its findings of fact for clear error. *United States v. Ashburn*, 20 F.3d 1336, 1339 (5th Cir. 1994). The district court has wide discretion in evaluating the reliability of the information presented before it and making the determination as to whether or not to consider it. *Id.* The district court need only determine its factual findings by a preponderance of the relevant and sufficiently reliable evidence. *Id.* The defendant bears the burden of proving that the evidence used against him in sentencing is materially untrue, inaccurate or unreliable. *Id.*

Torres argues that his sentence should be vacated because it was based on the "unreliable" and uncorroborated testimony of his drug accomplices who were testifying as a result of a plea agreement. Torres also complains that the witnesses did not give a prior written statement prior to their in-court testimony. We reject this challenge. First, the testimony at issue was sworn testimony given under oath in open court. Cases cited by Torres merely hold that *unsworn*

**11**

accusations of a co-defendant generally do not bear sufficient indicia of reliability to be considered by a trial court at sentencing. *See United States v. Ashburn*, 20 F.3d 1336, 1349 (5th Cir. 1994), *United States v. Ortiz*, 993 F.2d 204, 207 (10th Cir. 1993). Moreover, the lack of prior written statements goes only to credibility. The district court did not commit clear error by finding this sworn testimony was credible. Thus, the district court did not err in imposing a mandatory life sentence pursuant to 21 U.S.C. § 841(b) because there was credible evidence to support the finding that Torres continued in the drug conspiracy after his multiple, prior felony drug convictions became final.

Finally, Torres challenges his sentence on due process grounds. He argues that the prosecution's ability to offer inducements, e.g., reduced sentences, immunity, etc., to a witness in exchange for the testimony used to enhance his sentence violates his due process rights. Torres argues this is so, in part, because the ability is non-reciprocal, i.e., Torres's counsel is constrained by ethical rules from offering similar inducements. However, Torres offers no case to show that such the use of plea-bargains and offers of lower sentences, even though non-reciprocal, violate due process. In fact, "no practice is more ingrained in our criminal justice system" than the practice of the government calling a witness to testify under a plea bargain that promises him a reduced sentence. *United States v. Haese*, 162 F.3d 359, 366 (5th Cir. 1998). In his brief, Torres suggests the Government offered money (a "contingent fee") in exchange for testimony. However he offers no proof or citations to the record to support such a contention. At any rate, Torres's challenge is barred by *United States v. Cervantes-Pacheco*, 825 F.2d 310 (5th Cir. 1987) in which we held that there is no per se rule against finding that an informant paid a contingent fee is nonetheless a competent witness. In fact, we noted in *Cervantes* that a witness who is paid a fee for his services has less of an inducement to lie than witnesses who testify with promises of reduced sentences. *Id.* Thus, the fact that the witnesses were offered inducements in exchange for their testimony is just a credibility factor for the district court to consider. As we noted above, the district court did not abuse its considerable discretion in determining that the witness's

**12**

testimony was credible pursuant to sentencing Torres. Additionally, Torres brings no evidence which even suggests this is a rare case in which the use of a reduced sentence, a contingent fee, or any other inducement to testify is so outrageous as to violate due process. *See United States v. Ray*, 811 F.2d 1453, 1456-7 (11th Cir. 1987) (rejecting per se exclusion while noting that rare circumstances might arise in which the use of a contingently motivated informer might be so outrageous as to violate due process.) We therefore affirm Torres's sentence.

2.      Denial of request for transcript

Torres argues that he made a motion for the transcripts from his first trial, in which he was granted a mistrial, in order to prepare a defense against those witnesses who testified against him in the first trial and would do so again at his second trial. Although the mistrial was granted on May 18, 1998, Torres did not make a request for the transcripts of that trial until May 29, 1998. The request involved 700 pages of testimony, and was made ten days before the second trial started on June 8, 1999. The district court denied the motion, finding that its lateness of the motion meant that the court reporter did not have enough time to transcribe the testimony without delaying the second trial.

It is clear that an indigent defendant must be provided a transcript of prior proceedings when needed for an effective defense. *See Britt v. North Carolina,* 404 U.S. 226, 227 (1971); *United States v. Pulido*, 879 F.2d 1255, 1256 (5th Cir. 1989). This right is limited, however. The two factors bearing on the determination of need for transcripts for an effective defense are: (1) the value of the transcript to the defendant in connection with the proceedings for which it is sought, and (2) the availability of alternative devices – such as cross-examination of the witness to be impeached – that would fulfill the same functions as the transcript. *Britt*, 404 U.S. at 227. We have consistently recognized that an indigent is entitled to a complete transcript free of charge without showing a particular need for the transcript. *See id.* at 228; *United States v. Smith,* 605 F.2d 839, 843 (5th Cir. 1979). Thus, the determination of need in this case comes down to the availability of alternative devices.

In addition to the factor of need, timing and availability provide another limit on an indigent's right to a transcript. An indigent defendant may not be deprived of "the basic tools of an adequate defense or appeal, when those tools are *available* for a price to other prisoners." *Britt*, 404 U.S. at 227 (emphasis added). In other words, courts are required to make transcripts as available to indigents as they are for those who can pay. Where, as here, there is an issue as to whether the court was given adequate time to prepare the requested transcripts for *anybody*, indigent or not, we have given "significant weight to the timing of defendant's last minute request." *United States v. Smith*, 605 F.2d 839, 843 (5th Cir. 1979). *See also*, *Pulido*, 879 F.2d at 1257. Finally, a district court's managerial decisions are reviewed for abuse of discretion. *Smith*, 605 F.2d at 843.

Torres's motion requested all the testimony of all the witnesses who had previously testified in the original trial. In addition, it specifically asked for the previous testimony of Paul Cogwell, a McKinney police officer who had testified regarding Torres's participation in a controlled purchase of drugs.

As regards Cogwell, we find that the alternative device of cross-examination was effectively employed in lieu of the transcript. The only identified discrepancy in Cogwell's testimony was whether Torres returned to his apartment (which is what Cogwell testified at trial) or drove off in a car (which is how the report on the incident read) after the alleged buy took place. Defense counsel vigorously cross-examined Cogwell about which account was true, and Cogwell admitted that he did not know why the report was different than his testimony. Thus, counsel was able to attack Cogwell's credibility without the transcript of his prior testimony. Because the alternative used by counsel fulfilled the same function as a transcript, there was no error in denying the request for the transcript, and any error, if made, was harmless.

We note that Torres also argues that the lack of a transcript impaired his ability to cross-examine other witnesses who had testified about Torres's involvement in various drug transactions. The district court noted that it may have been able to fulfill a more limited request

**14**

for specific, identified portions of the transcript. However, the record does not show that Torres made a specific request for the testimony of any of these witnesses from the first trial. Thus, putting aside the request for Cogwell's testimony, Torres made an indiscriminate request for 700 pages of transcript, and did so just ten days before the beginning of the second trial. In the absence of a request for specific testimony, the issue here, therefore, is whether the entire transcript request was reasonably available and whether the district court erred in denying this broad request. As noted, our case law frowns on the last minute, indiscriminate requests for transcripts in lengthy trials such as the one at issue here. *United States v. Smith*, 605 F.2d 839, 843 (5th Cir. 1979) (requesting over 1000 pages of testimony five days prior to trial); *United States v. Pulido*, 879 F.2d 1255, 1257 (5th Cir. 1979). Given this caselaw, we find that the district court did not err in refusing to provide the entire transcript where the district court reasonably determined that the untimely and indiscriminate nature of the request made compliance with that request impossible.

In conclusion, we find no error in the denial of the full transcript or in the imposition of Torres's life sentence. We therefore affirm Torres's sentence and conviction.

### III.    CONCLUSION

The convictions and sentences of all Appellants are hereby AFFIRMED.