**UNITED STATES COURT OF APPEAL**
**FIFTH CIRCUIT**

_____

No. 92-4302
_____

UNITED STATES OF AMERICA,

                    Plaintiff-Appellee,

          versus

RODERICK DEANDRA SPARKS, BONNIE RAY
DEWS, DAVID LEE SPIGNOR, and JOE
THOMAS TUCKER,

                    Defendants-Appellants.

_____

Appeals from the United States District Court
      For the Eastern District of Texas
_____

(September 14, 1993)

Before EMILIO M. GARZA and DeMOSS, Circuit Judges, and ZAGEL,
District Judge.[1]

EMILIO M. GARZA, Circuit Judge:

     Defendants, Roderick Deandra Sparks ("Sparks"), Bonnie Ray

Dews ("Dews"), David Lee Spignor ("Spignor"), and Joe Thomas Tucker

("Tucker"), were jointly tried before a jury and convicted of

various offenses stemming from a conspiracy to distribute crack

cocaine.  All four defendants were convicted of conspiring to

possess with intent to distribute a controlled substance, in

_____

     [1]     District Judge of the Northern District of Illinois, sitting by
designation.

violation of 21 U.S.C. § 846 (1988). Sparks, Dews, and Spignor were found guilty of possession with intent to distribute within 1,000 feet of a public school, in violation of 21 U.S.C. § 860 (1988). Tucker was convicted of aiding and abetting Sparks, Dews, Spignor, and ten other persons in possessing with intent to distribute a controlled substance within 1,000 feet of a school. Tucker also was convicted of conspiring to use and carry firearms in relation to a drug offense, and of the completed substantive firearms offense, in violation of 18 U.S.C. §§ 371 and 924(c) (1988). Additionally, the jury found Dews guilty of possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1) (1988). All four defendants now appeal their convictions, and Sparks, Dews, and Spignor appeal their sentences. We affirm the district court in all respects.

**I**

From 1987 until early 1991, Tucker operated an extensive conspiracy to distribute crack cocaine from property he owned in Tyler, Texas ("the field"). Tucker would obtain the crack cocaine in an uncut form and cut it into smaller "rocks" that could be sold at the field to crack users. Tucker, who controlled the hours and methods of operation and number of persons selling crack at the field, employed Sparks and Dews, among others, to sell crack at the field. Tucker also employed Spignor to construct a shed on the field, in which crack was stored, and later to sell cocaine. As the conspiracy grew, it became more profitable, netting up to $5000

-2-

a day in crack sales.  Tucker's sellers also traded crack for food, electronic equipment, guns, clothes, and sex.

A cooperative investigation by local and federal authorities led to the arrests of a number of participants in the conspiracy, including Sparks, Dews, Spignor, and Tucker, all of whom were charged in an indictment alleging a number of drug-related offenses.  A jury found all four defendants guilty of the charged offenses.  The district court sentenced Sparks to a prison term of 168 months.  Dews received a term of 188 months.  Spignor received a 292 month term of imprisonment.  The district court sentenced Tucker to a term of 292 months on the drug and firearms conspiracy counts and a consecutive 60 month term on the firearms count.[2]  The defendants now appeal their convictions and sentences.[3]

---

[2]     The four defendants also received terms of supervised release and special assessments.  Additionally, the jury returned a special verdict ordering the forfeiture of real property and a vehicle owned by Tucker.

[3]     Dews and Spignor attack the sufficiency of the evidence to support their conspiracy convictions.  Spignor and Tucker attack the sufficiency of the evidence to support their convictions for possession with intent to distribute a controlled substance within 1,000 feet of a public school.  Spignor and Tucker also argue that they were subjected to selective prosecution, which requires a reversal of their convictions and a dismissal of the indictment.
Sparks raises three additional arguments:  (a) that the district court erred in admitting evidence of other crimes, wrongs, or acts over his Fed. R. Evid. 404(b) objection;  (b) that the district court erred in admitting a co-conspirator's testimony;  and (c) that the district court erred in admitting the testimony of a government witness even though the government failed to comply with the disclosure provisions of the Jencks Act, 18 U.S.C. § 3500 (1988).         Tucker attacks the district court's decision finding him competent to stand trial.  He also challenges the sufficiency of the evidence to support his convictions on both the firearms counts and a single aiding and abetting count.  Dews contends that the district court erred in both denying his motion to sever and permitting a co-conspirator to testify against him.
Three defendants argue that the district court erred with regard to several aspects of their sentences.  Dews and Spignor contend that the district court erred in (a) enhancing their sentences for possession of a firearm during the course of the offenses, (b) holding them accountable for an excessive quantity of drugs, (c) refusing to decrease their sentences by

## II

### *Joint Claims*

### A

Dews and Spignor contend that the evidence was insufficient to support their convictions for conspiracy to possess with intent to distribute a controlled substance. Spignor and Tucker argue that the evidence was insufficient to support their convictions for possession with intent to distribute a controlled substance within 1,000 feet of a public school. These claims are without merit.

### (i)

"In deciding the sufficiency of the evidence, we determine whether, viewing the evidence and the inferences that may be drawn from it in the light most favorable to the verdict, a rational jury could have found the essential elements of the offenses beyond a reasonable doubt." *United States v. Pruneda-Gonzalez*, 953 F.2d 190, 193 (5th Cir.), *cert. denied*, 112 S. Ct. 2952, 119 L. Ed. 2d 575 (1992). "It is not necessary that the evidence exclude every rational hypothesis of innocence or be wholly inconsistent with every conclusion except guilt, provided a reasonable trier of fact could find the evidence establishes guilt beyond a reasonable doubt." *Id.* "We accept all credibility choices that tend to

---

granting them minimal or minor participant status, and (d) refusing to downwardly depart from the Federal Sentencing Guidelines. Sparks argues that the district court violated his right to due process of law by imposing more stringent sentences on defendants who exercised their constitutional right to a trial by jury. Dews asserts that the district court erred by failing to make a specific finding regarding the quantity of drugs involved in the conspiracy reasonably foreseeable to him and by failing to apply the rule of lenity when sentencing him.

-4-

support the jury's verdict." *United States v. Anderson*, 933 F.2d 1261, 1274 (5th Cir. 1991). We apply this standard of review here because Dews and Spignor properly preserved their sufficiency arguments by moving for a judgment of acquittal at trial. *See United States v. Galvan*, 949 F.2d 777, 782-83 (5th Cir. 1991).

In order to prove that a defendant conspired to possess crack with intent to distribute it, the government must prove beyond a reasonable doubt that (1) there was a conspiracy[4] to possess with intent to distribute crack, (2) the defendant knew about the conspiracy, and (3) the defendant voluntarily joined the conspiracy. *See United States v. Hernandez-Palacios*, 838 F.2d 1346, 1348 (5th Cir. 1988). "No evidence of overt conduct is required. A conspiracy agreement may be tacit, and the trier of fact may infer agreement from circumstantial evidence." *Id.* (footnotes omitted).

## (ii)

An abundance of evidence presented by the prosecution established the existence of the conspiracy and the knowledge of and voluntary participation in the conspiracy by both Dews and Spignor. Two co-conspirators testified that Dews served as a crack seller and lookout for Tucker's operations at the field. Moreover, agent Marvin Richardson testified that Dews both sold crack to him

---

[4] A conspiracy consists of "an agreement by two or more persons to commit one or more unlawful acts and an overt act by one of the conspirators in furtherance of the conspiracy." *United States v. Romeros*, 600 F.2d 1104, 1106 (5th Cir. 1979), *cert. denied*, 444 U.S. 1077, 100 S. Ct. 1025, 62 L. Ed. 2d 759 (1980).

at the field and arranged for him to purchase a large quantity of cocaine at another location. Richardson's testimony regarding these purchases was corroborated by yet another co-conspirator. Two co-conspirators also identified Spignor as a member of the conspiracy who sold crack for Tucker at the field. Moreover, the record demonstrated that Spignor helped to construct a shed used for the storage of crack at the field and attempted on one occasion to sell crack to agent Richardson, who declined because he had already purchased crack from other sellers at the field. Richardson testified that Spignor complained on this occasion that the other sellers were selling crack during the sales period that Tucker had allocated to him, thereby demonstrating his knowledge of and participation in the conspiracy.

Although some of the government's evidence regarding the participation by Dews and Spignor in the conspiracy may have been circumstantial, it was more than sufficient to support the jury's verdict. *See United States v. Martinez*, 975 F.2d 159, 162 (5th Cir. 1992), *cert. denied*, 113 S. Ct. 1346, 122 L. Ed. 2d 728 (1993). Consequently, we reject their insufficiency of the evidence arguments.

### (iii)

The evidence also supports the jury's conclusion that Spignor and Tucker[5] were guilty of possessing with intent to distribute

---

[5] We review Tucker's insufficiency claim under the more stringent "manifest injustice" standard, rather than the "rational jury standard, because he did not preserve it by moving for a judgment of acquittal following

crack within 1,000 feet of a public school.[6]  At trial, Charlie Thomas, a city of Tyler engineer, identified an aerial photograph of the area encompassing the field and the nearby public school. Thomas testified that the photograph demonstrated that the field was located within 1,000 feet of the school.  Neither Spignor nor Tucker presented any contrary evidence.  Although cross-examination did create an issue as to Thomas' credibility, the jury resolved the issue in favor of the government.  Because "[w]e accept all credibility choices that tend to support the jury's verdict," *United States v. Anderson*, 933 F.2d 1261, 1274 (5th Cir. 1991), we find sufficient evidence supporting the convictions.

**B**

Spignor and Tucker contend that the district court erred in failing to dismiss the indictment for selective prosecution.  They argue that the government indicted and prosecuted all the male co-conspirators while failing to indict or prosecute any women co-conspirators.  Spignor and Tucker argue that this proves purposeful discrimination by the government.

Generally, the government has broad discretion in determining who to prosecute.  *See Wayte v. United States*, 470 U.S. 598, 607,

---

either the close of the government's case or the trial.  *See* discussion *infra* part V.B. However, Tucker's contention is without merit under either the rational jury or the manifest injustice standard.

[6]     The defendants do not contend that the evidence failed to demonstrate that they possessed a controlled substance with the intent to distribute it, but only that they did not possess any controlled substances within 1,000 feet of a public school.

-7-

105 S. Ct. 1524, 1530, 84 L. Ed. 2d 547 (1985). Consequently, Spignor and Tucker bear a heavy burden in their attempt to demonstrate unconstitutional selective prosecution. *See United States v. Jennings*, 724 F.2d 436, 445 (5th Cir.), *cert. denied*, 467 U.S. 1227, 104 S. Ct. 2682, 81 L. Ed. 2d 877 (1984). A prima facie showing of unconstitutional selective prosecution requires Spignor and Tucker first to demonstrate that they were singled out for prosecution while others similarly situated who committed the same crime were not prosecuted. Spignor and Tucker next must show that the government's discriminatory selection of them for prosecution was invidious or done in bad faith))i.e., that the government selected its course of prosecution "because of," rather than "in spite of," its adverse effect upon an identifiable group. *Wayte*, 470 U.S. at 610, 105 S. Ct. at 1532; *United States v. Ramirez*, 765 F.2d 438, 440 (5th Cir. 1985), *cert. denied*, 474 U.S. 1063, 106 S. Ct. 812, 88 L. Ed. 2d 786 (1986).

Spignor and Tucker fail to satisfy either prong of a prima facie selective prosecution claim. They argue that the government dropped charges against one female named in the indictment, but neglect to point out that she pled guilty in state court to possession of a controlled substance and originally was listed as a prosecution witness. Tucker further alleges that "other female witnesses and/or accomplices were not charged or their federal charges were dismissed or agreements were reached not to prosecute on other violations." The record, however, reflects that at least

one other female pled guilty to a charge of possession of a controlled substance, then testified as a government witness in exchange for other charges being dropped. There certainly is nothing inherently invidious about such a plea bargain, *see Jennings*, 724 F.2d at 446 (stating that while "persons cooperating with the government in this case . . . were not prosecuted while Jennings was does not come even close to meeting the `similarly situated' branch of the selective prosecution defense"), and Spignor and Tucker fail to point out how the agreement demonstrates bad faith by the government. *See Ramirez*, 765 F.2d at 440 (holding that "conclusional allegations of impermissible motive are not sufficient" to demonstrate the government acted in bad faith). As Spignor and Tucker fail to prove that the government discriminated against them in any way, we reject their claim of unconstitutional selective prosecution.

### III

*Roderick Deandra Sparks*

### A

Sparks initially complains that the district court erred in admitting testimony from officer Paul Black that Contessa Williams, a co-conspirator who testified for the government, was identified by Sparks as a government informant and, as a result, was assaulted by an unknown person. Sparks argues that Black's testimony constituted evidence of prior acts of misconduct, which is

inadmissible under Fed. R. Evid. 404(b).[7] Sparks seeks a new trial because the government gave no pre-trial notice of its intent to use such evidence and also because the government procured Black's testimony on this matter for the sole purpose of unfairly prejudicing the jury against Sparks.

Based upon information received from Williams, the government indicted as a co-defendant an individual named Tim Johnson. At trial, however, Williams informed the government that it had indicted the wrong person, whereupon charges against Johnson were dismissed. Williams then proceeded to testify against the remaining defendants. On cross-examination, defense counsel elicited from Williams testimony that the government never asked her to positively identify Johnson before trial began. Counsel for Sparks also attempted to demonstrate that Williams was biased against Sparks because of several arguments they had. Williams explained that she had argued with Sparks only after Sparks stopped selling crack to her because he believed that she was an informant.

Officer Black later testified for the government. On cross-examination, defense counsel challenged both his credibility and the credibility of Williams by repeated questioning about the

_____

[7]    Rule 404(b) states that evidence of other crimes, wrongs,or acts is admissible under certain conditions,

> provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

-10-

erroneous indictment of Johnson. On redirect examination, Black stated that Williams had not been shown Johnson's picture before trial because the government had relocated her outside of Tyler as a result of two assaults upon her. When asked what prompted these assaults, Black stated, "Because she had been compromised in this case by Mr. Sparks." After Sparks objected under Rule 404(b), Black testified that he did not mean to imply that Sparks or any of the other three defendants actually had assaulted Williams, but only that Sparks had seen Williams in the company of federal agents and shortly after that it was known on the street that Williams was an informant. Sparks made no further objection, nor did he request any cautionary instruction.

We find Sparks' contention that Black's testimony was inadmissible under Rule 404(b) to be without merit. The government sought to explain the circumstances of the erroneous indictment only after defense counsel had repeatedly attacked both Williams' credibility and the government's credibility for not showing Williams a picture of Johnson before indicting him. *See Jennings*, 724 F.2d at 443 (stating that the prosecution is not obliged to stand idly by while the credibility of its witnesses is challenged). Black's testimony that Sparks had compromised Williams merely was cumulative of Williams' earlier testimony that Sparks had seen her in the presence of federal agents and thereafter refused to sell crack to her, and Sparks failed to object to her testimony. *See United States v. Allie*, 978 F.2d

1401, 1408-09 (5th Cir. 1992) (stating that the improper admission of evidence that is merely cumulative constitutes harmless error), *cert. denied*, 113 S. Ct. 1662, 123 L. Ed. 2d 281 (1993). Moreover, Black clarified his testimony by stating that he did not mean to imply that Sparks actually assaulted Williams, and the district court's instruction to the jury that the defendants were not on trial for any conduct not alleged in the indictment cured any alleged harm. *See United States v. Fragoso*, 978 F.2d 896, 902 (5th Cir. 1992) (stating that a district court's instruction may cure error), *cert. denied*, 113 S. Ct. 1664, 123 L. Ed. 2d 282 (1993). We thus hold that Sparks' Rule 404(b) claim is without merit.

### B

Sparks argues that the district court erred in admitting two pill bottles containing crack that were confiscated from him. Sparks asserts that because the officer who seized the bottles did not personally initial them and thus could not "positively identify" them, the district court "lacked sufficient authenticity of the evidence to reasonably conclude that [the] disputed evidence's foundation had been established."

Evaluating the admissibility of evidence is a matter within the sound discretion of the district court. *United States v. Jardina*, 747 F.2d 945, 950 (5th Cir. 1984), *cert. denied*, 470 U.S. 1058, 105 S. Ct. 1773, 84 L. Ed. 2d 833 (1985). In cases where a defendant questions whether the evidence offered is the same as the items actually seized, the role of the district court is to

determine whether the government has made a prima facie showing of authenticity. If the government meets its burden, the evidence should be admitted, and the jury has the ultimate responsibility for deciding the authenticity issue. *United States v. Logan*, 949 F.2d 1370, 1377-78 (5th Cir. 1991), *cert. denied*, 112 S. Ct. 1982 (1992).

The district court did not abuse its discretion in admitting the disputed evidence. Officer Bobby Stark, who seized the bottles of crack from Sparks, testified that the bottles admitted into evidence were the same bottles that he had seized. Stark also testified that after he gave the bottles to Officer Richard Drew, who was responsible for collecting all evidence seized during the raid, the bottles were placed into a sealed envelope on which Drew wrote Stark's name. The envelope then was stored in an evidence locker at the police department until Sergeant Frank Blake transported it to a laboratory for chemical analysis. Blake testified that he took the sealed envelope to the laboratory. A chemist at the laboratory then testified that the bottles in the envelope contained crack cocaine. While Drew, the officer responsible for collecting the evidence, did not testify, this does not render the bottles inadmissible. The break in the chain of custody simply goes to the weight of the evidence, not its admissibility. *See United States v. Shaw*, 920 F.2d 1225, 1229-30 (5th Cir.), *cert. denied*, 111 S. Ct. 2038, 114 L. Ed. 2d 122 (1991) (noting that a gap in the chain of custody is a matter of weight

rather than admissibility).  The government, therefore, made out a prima facie showing of admissibility, and the district court properly admitted the evidence.

## C

Sparks finally contends that the government failed to produce material required to be disclosed pursuant to the Jencks Act, 18 U.S.C. § 3500,[8] and that this failure required the district court to strike the testimony of Bobby Harper, an informant for the government.  The government, on the other hand, contends that it produced all Jencks Act material.  We agree.

Harper testified as to three occasions when he purchased crack from Sparks and another seller at the field.  Harper secretly recorded each transaction with equipment provided by government agents and testified that he had signed detailed reports relating to each transaction.  Sparks admits the government produced these reports.  Harper, however, later testified that the reports he signed were "transcripts of the deal going down," not mere

_____

[8]    18 U.S.C. § 3500 provides:

(b)  After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement . . . of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. . . .
. . . .
(d)  If the United States elects not to comply with an order of the court under [this section] to deliver to the defendant any such statement, or such portion thereof as the court may direct, the court shall strike from the record the testimony of the witness . . . .

-14-

summaries of the transactions.  Sparks then requested that the government produce the transcripts; the government responded that Harper never signed any transcripts.  Despite the government's repeated explanations that it produced everything Harper signed, Sparks still insists that the government failed to produce the "transcripts."

The record fully supports the government's explanation that Harper was mistaken about what he had signed.  The agent responsible for preparing the reports signed by Harper testified that he prepared only summaries of the transactions, not transcripts of the tapes.  Moreover, Harper testified that the statements he reviewed before testifying were the same ones that he had previously signed;  these were then identified as the reports produced by the government.[9]  Sparks also has not demonstrated a need for the transcripts, as the government produced the actual tape recordings of the transactions.  *See United States v. McKenzie*, 768 F.2d 602, 609 (5th Cir. 1985), *cert. denied*, 474 U.S. 1086, 106 S. Ct. 861, 88 L. Ed. 2d 900 (1986) (holding that the government's failure to produce a transcript of a witness interview

---

[9]    Other evidence also supports this conclusion.  For example, Harper testified that the statements that he signed were approximately two pages each, but each drug purchase involved from five to twenty minutes of conversation.  In addition, Harper signed a statement relating the circumstances of his purchase of crack from Sparks, but no tape recording of that transaction exists because the machine malfunctioned on that occasion. Finally, the district court required the government to produce for an *in camera* inspection all materials relating to Harper and found no transcripts signed by Harper.

did not require reversal because it provided only cumulative impeachment material).  Moreover, "[u]nless there are concrete facts or factors indicating that [the prosecutor, an officer of the court,] has failed to comply with the mandate of the law, the [district court] could accept his assurances that he has." *United States v. Resnick*, 483 F.2d 354, 358 (5th Cir.), *cert. denied*, 414 U.S. 1008, 94 S. Ct. 370, 38 L. Ed. 2d 246 (1973);  *see also United States v. Williams*, 604 F.2d 1102, 1115-16 (8th Cir. 1979). Accordingly, the district court did not err in refusing to strike Harper's testimony from the record.

## IV

### *Bonnie Ray Dews*

### A

Dews contends that the district court erred in denying his motion for severance under Fed. R. Crim. P. 14.  Denial of a motion for severance is reviewable only for abuse of discretion.  *See Zafiro v. United States*, 113 S. Ct. 933, 939, 122 L. Ed. 2d 317 (1993);  *United States v. Arzola-Amaya*, 867 F.2d 1504, 1516 (5th Cir.), *cert. denied*, 493 U.S. 933, 110 S. Ct. 322, 107 L. Ed. 2d 312 (1989).  "Reversal is warranted only when the appellant can demonstrate compelling prejudice against which the trial court was unable to afford protection."  *Arzola-Amaya*, 867 F.2d at 1516. Moreover, the general rule is that persons indicted together should be tried together, especially in conspiracy cases.  *Id.*  Dews presents no valid rationale for departing from this rule.

Dews argues that he was entitled to a severance because (a) he was at the field only once during the existence of the conspiracy, (b) he was the only person charged with unlawful conduct that supposedly occurred off of the field, (c) other co-defendants and unindicted co-conspirators would have testified on his behalf had his motion been granted, and (d) being tried with the other defendants created a prejudicial spillover effect. We disagree. Multiple witnesses testified that Dews was one of Tucker's employees and placed him at the field as early as 1989, two years before he was arrested there. Moreover, the unlawful conduct that Dews contends occurred away from the field actually began at the field. Dews' conclusory allegation that other persons would have testified on his behalf had his motion to sever been granted does not demonstrate an abuse of discretion by the district court.[10] Moreover, the mere presence of a spillover effect does not ordinarily warrant severance. United States v. Rocha, 916 F.2d 219, 228 (5th Cir. 1990), *cert. denied*, 111 S. Ct. 2057, 114 L. Ed. 2d 462 (1991). Furthermore, the district court properly instructed

---

[10] *See United States v. Valdez*, 861 F.2d 427, 432-33 (5th Cir. 1988) (stating that conclusory assertions do not establish error), *cert. denied*, 489 U.S. 1083, 109 S. Ct. 1539, 103 L. Ed. 2d 844 (1989); *United States v. Williams*, 809 F.2d 1072, 1084 (5th Cir.) (holding that mere assertions that a co-defendant would testify if severance was granted did not establish grounds for severance), *cert. denied*, 484 U.S. 896, 108 S. Ct. 228, 98 L. Ed. 2d 187 (1987); *United States v. DeSimone*, 660 F.2d 532, 539-40 (5th Cir. Unit B 1981) (same), *cert. denied*, 455 U.S. 1027, 102 S. Ct. 1732, 79 L. Ed. 2d 149 (1982); *United States v. Diez*, 515 F.2d 892, 902-03 (5th Cir. 1975) (same), *cert. denied*, 423 U.S. 1052, 96 S. Ct. 780, 46 L. Ed. 2d 641 (1976).

the jury to limit evidence to the appropriate defendant, and "`juries are presumed to follow their instructions.'" *Zafiro*, 113 S. Ct. at 939 (quoting *Richardson v. Marsh*, 481 U.S. 200, 209, 107 S. Ct. 1702, 95 L. Ed. 2d 176 (1987)). Accordingly, the district court did not abuse its discretion by denying Dews' motion for severance.

**B**

Dews challenges the district court's admission of the testimony of co-conspirator Paul Dews.[11] On the first day of the trial, Paul Dews accepted the government's offer of a plea bargain that required him to testify against his fellow conspirators, and the government notified defense counsel that Paul Dews would testify. Dews argues that the eleventh hour acceptance by Paul Dews of the government's offer, which also was made to him, and the testimony from Paul Dews created unfair surprise and prejudice because "proper preparation for cross-examination of the witness was not possible." Dews, however, failed to ask the district court for a continuance with which the alleged surprise. *See United States v. Jennings*, 724 F.2d 436, 445 (5th Cir.) (stating that the normal remedy for surprise is to request a recess), *cert. denied*, 467 U.S. 1227, 104 S. Ct. 2682, 81 L. Ed. 2d 877 (1984). As Dews merely relies on conclusory allegations and fails to point out any specific injury he suffered, we reject his contention that the district court erred in allowing Paul Dews to testify. *See Valdez*,

---

[11]     Paul Dews is the cousin of Bonnie Ray Dews.

-18-

861 F.2d at 432-33 (stating that conclusory assertions do not establish error).

## V

### *Joe Thomas Tucker*

#### A

Prior to trial, the district court granted Tucker's motion for a psychiatric examination.  After hearing testimony from both a psychiatrist and a psychologist who examined Tucker, the district court found Tucker competent to stand trial.  Tucker, relying primarily on findings by the Veterans Administration in the 1970s that he was a paranoid schizophrenic,[12] argues that the district court erred in finding him competent to stand trial.

The test for competency, governed by 18 U.S.C. § 4241 (1988),[13] is twofold.  First, the defendant must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding." *Dusky v. United States*, 362 U.S. 402, 402 80 S. Ct. 788, 789, 4 L. Ed. 2d 824 (1960).  Second, the defendant must have "a rational as well as factual understanding of the

---

[12]    Tucker also alleges that the government's witnesses intentionally distorted the results of his psychological evaluation.  Tucker's trial counsel testified at a pretrial hearing regarding Tucker's incompetency claim that he could not adequately communicate with Tucker and believed Tucker did not understand the consequences of the charges against him.

[13]    Section 4241 provides:

If, after the hearing [to determine competency], the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General. . . .

proceedings against him." *Id.* After a careful review of the record, we conclude that the government demonstrated that Tucker was competent to stand trial. Dr. William Gold, the psychiatrist who examined Tucker, testified that Tucker was able to understand the charges against him and to assist his attorney in his defense. Dr. Michael Morrison, a psychologist who also met with Tucker, testified that Tucker understood the charges against him, seemed to understand the nature and consequences of the proceedings against him, and had the ability to aid his attorney in his defense. Because this testimony amply supports the district court's conclusion, the district court's ruling that Tucker was competent to stand trial was not clearly erroneous or arbitrary. *See United States v. Birdsell*, 775 F.2d 645, 648 (5th Cir. 1985).

**B**

Tucker challenges the sufficiency of the evidence supporting his conviction on one of the substantive drug counts and his convictions on the weapons charges. Because Tucker failed to move for a judgment of acquittal either at the close of the government's case or following trial,[14] "[w]e are limited to the determination of whether there was a manifest miscarriage of justice. Such a miscarriage would exist only if the record is devoid of evidence pointing to guilt, or . . . [if] the evidence on a key element of the offense was so tenuous that a conviction would be shocking." *United States v. Galvan*, 949 F.2d 777, 782-83 (5th Cir. 1991)

---

[14] *See* Fed.R.Crim.P. 29.

-20-

(citations omitted). "In making this determination, the evidence, as with the regular standard for review of insufficiency of evidence claims, must be considered `in the light most favorable to the government, giving the government the benefit of all reasonable inferences and credibility choices.'" *United States v. Ruiz*, 860 F.2d 615, 617 (5th Cir. 1988) (quoting *United States v. Hernandez-Palacios*, 838 F.2d 1346, 1348 (5th Cir. 1988)).

**(i)**

Count 2 charged Tucker with aiding and abetting Peggy Tucker's possession with intent to distribute a controlled substance within 1,000 feet of a public school. In April 1989 as two police officers approached the field, they observed Peggy Tucker[15] sitting in the front yard. When she noticed the officers approaching, Peggy Tucker began running toward the back of the field. As she ran, approximately 47 rocks of crack fell onto the ground from her open purse. When the officers caught up to her, she was attempting to bury a large rock of crack under a tree near the rear of the field. Tucker contends that because he was not present at the field when Peggy Tucker was arrested, his conviction rests upon "conjecture, surmise, suspicion and speculation."

The evidence supporting Tucker's conviction is sufficient if it demonstrates Tucker's "association and participation with the venture . . . in a way calculated to bring about that venture's success." *United States v. Salazar*, 958 F.2d 1285, 1292 (5th

---

[15] Peggy Tucker is the sister of defendant Tucker.

-21-

Cir.), *cert. denied*, 113 S. Ct. 185, 121 L. Ed. 2d 129 (1992). Thus Tucker, to be an aider and abettor, need not have been present at the field when Peggy Tucker was arrested nor need he actually have furnished the crack that Peggy Tucker possessed. *Id.* The government presented sufficient evidence supporting Tucker's conviction by demonstrating that Peggy Tucker possessed with intent to distribute cocaine within 1,000 feet of a public school and also that Tucker exercised complete control over all persons, including Peggy Tucker, who sold cocaine at the field. Other evidence supporting Tucker's conviction includes proof of Peggy Tucker's close ties to the conspiracy and the fact that Tucker's sellers occasionally sold crack at the field for Peggy Tucker. Accordingly, we find sufficient evidence to uphold Tucker's conviction.

**(ii)**

Tucker further contends that the evidence was insufficient to support his convictions for conspiracy to use and carry firearms in relation to a drug offense and the completed offense using and carrying firearms in relation to a drug offense. As with his other claims, we find his argument without merit.

When executing a valid search warrant at the field in October 1990, officers discovered a shotgun in a truck owned by Tucker and a pistol in a shed identified by witnesses as Tucker's office. The record contains substantial evidence that Tucker was in sole control of both the field and those persons who sold crack there,

-22-

allowed his sellers to exchange crack for firearms on several occasions, told the sellers of the location of the firearms and to use them for protection if the need arose, and had admitted to a federal agent that he owned the weapons and kept them at the field for protection. We find that this evidence is sufficient to convict Tucker for the firearms offenses. *See Smith v. United States*, 113 S. Ct. 2050, 2054, 124 L. Ed. 2d 138 (1993) (holding that trading drugs for firearms constitutes "use" of the firearms); *United States v. Smith*, 930 F.2d 1081, 1086 (5th Cir. 1991) (holding that possession by a co-conspirator is sufficient to sustain a possession of firearms conviction); *United States v. Molinar-Apodaca*, 889 F.2d 1417, 1424 (5th Cir. 1989) (stating that a firearms conviction is demonstrated if a gun was available to provide protection for the defendant in connection with his drug related activities).

**VI**

*Sentencing*

Sparks, Dews, and Spignor appeal the sentences imposed by the district court under the Sentencing Guidelines. We will affirm the district court's sentence "so long as it results from a correct application of the guidelines to factual findings which are not clearly erroneous." *United States v. Sarasti*, 869 F.2d 805, 806 (5th Cir. 1989). "A factual finding is not clearly erroneous as long as it is plausible in light of the record as a whole." *United States v. Sanders*, 942 F.2d 894, 897 (5th Cir. 1991).

**A**

Dews and Spignor argue that they are entitled to a downward adjustment under § 3B1.2 of the sentencing guidelines for minimal or minor participation in the offenses.[16] Both argue that they were only slightly involved with the conspiracy and therefore are less culpable than the other conspirators. Section 3B1.1, however, is designed to reduce a sentence only when the defendant is substantially less culpable than the average participant in the offense. *See United States v. Buenrostro*, 868 F.2d 135, 138 (5th Cir. 1989), *cert. denied*, 495 U.S. 923, 110 S. Ct. 1957, 109 L. Ed. 2d 319 (1990). The district court denied the requests for downward adjustment because it did not find that either Dews or Spignor was substantially less culpable than the average participant.

The argument that Dews and Spignor were minimal or minor participants is belied by the record. Dews made at least one sale of crack to an undercover agent, was identified by at least two co-conspirators as an employee of Tucker, and arranged at the field for an agent to purchase cocaine at another location. Spignor

---

[16] Section 3B1.2 provides:

Based on the defendant's role in the offense, decrease the offense level as follows:

(a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.

(b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.

In cases falling between (a) and (b), decrease by 3 levels.

United States Sentencing Commission, *Guidelines Manual*, § 3B1.2 (Nov. 1991).

-24-

constructed a shed on the field that was used as Tucker's personal office, was identified by at least two co-conspirators as one of Tucker's sellers, and attempted to sell crack to an undercover agent on at least one occasion. Consequently, the district court's finding that Dews and Spignor were not minimal or minor participants is not clearly erroneous, and we will not disturb it.[17]

**B**

**(i)**

Sparks, Dews, and Spignor assert that the district court erred by increasing their offense levels under § 2D1.1(b)(1) of the Sentencing Guidelines for possession of a firearm. The district court found that the possession of firearms by Tucker, *see* discussion *supra* part V.B.(ii), was reasonably foreseeable to Sparks, Dews, and Spignor.[18] As a result, the district court found that enhancement for possession of a firearm was appropriate. We agree.

"The adjustment [for possession of a firearm] should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected to the offense." U.S.S.G. § 2D1.1, comment. (n.3). "The burden of proof in this respect is on the

_____

[17] Relying on his minor participant argument, Dews further contends that the district court committed error in refusing to downwardly depart from the sentencing guidelines. Because we reject his minimal or minor participant claim, we thus reject his downward departure contention.

[18] Contrary to Dews' intimations, we previously endorsed the reasonable foreseeability standard found in the Guidelines. *See United States v. Aguilara-Zapata*, 901 F.2d 1209, 1215-16 (5th Cir. 1990).

government under a preponderance of the evidence standard." *United States v. Aguilera-Zapata*, 901 F. 2d 1209, 1215 (5th Cir.1990). We find that the government met its burden. The record reflects that Sparks once brandished a pistol while chasing someone off the field who had smoked his crack, sellers at the field exchanged crack for firearms, Tucker went to great lengths to protect the conspiracy from detection,[19] and Tucker knowingly and intentionally possessed firearms at the field in furtherance of the conspiracy. *See Aguilera-Zapata*, 901 F.2d at 1215 (stating that "sentencing courts [in drug cases] may ordinarily infer that a defendant should have foreseen a co-defendant's possession of a dangerous weapon, such as a firearm, if the government demonstrates that another participant knowingly possessed the weapon while he and the defendant committed the offense"). Accordingly, the district court's finding that Tucker's possession of a firearm was reasonably foreseeable to the other defendants was not clearly erroneous.

## (ii)

Sparks also contends that he was denied due process of law because only those co-defendants who elected to go to trial, as opposed to those who pled guilty, had their sentences enhanced for possession of firearms. Sparks, however, may not use the sentences received by his co-defendants as yardsticks for the sentence he

---

[19] For example, he constructed a wooden privacy fence around the field, placed wooden stumps in front of the fence to prevent police vehicles from gaining access to the field by smashing down the fence, built a kennel in which he could safely store crack and keep guard dogs, continuously operated a "burn barrel" and a fireplace in which crack could be destroyed in the event of a police raid, and employed several individuals to watch for police raids.

argues he should have received. *United States v. Harrison*, 918 F.2d 469, 475 (5th Cir. 1990). This is especially true when the co-defendants pled guilty and cooperated with the government. The sentences of such co-defendants "are obviously the result of leniency and are not relevant to the present constitutional inquiry." *United States v. Devine*, 934 F.2d 1325, 1338-39 (5th Cir. 1991), *cert. denied*, 112 S. Ct. 954, 117 L. Ed. 2d 121 (1992). Sparks elucidates no other facts in support of his due process claim. Consequently, we find his claim to be without merit.

## C

Dews and Spignor also contend that the district court erred by calculating their sentences on the basis of sales of crack not only by themselves, but also by their co-conspirators.[20] They argue that it was not reasonably foreseeable to them that the conspiracy would involve such a large quantity of drugs and the district court thus should not have taken that amount into account when determining their respective base offense levels. *See U.S.S.G.* § 1B1.3(a)(1).[21]

---

[20] The presentence investigative report ("PSR") found that 57.98 grams of crack cocaine were distributed within 1,000 feet of a public school and properly attributable to both Dews and Spignor. The report also found that the total amount of drugs chargeable to the conspiracy was 73.03 grams of cocaine base and 116.2 grams of marijuana. The district court adopted these findings.

[21] A defendant's base offense level is determined on the basis of

all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense, or that otherwise were in furtherance of that offense.

Spignor also argues that he was charged with drug quantities not properly attributable to him because of his late entry into the conspiracy.

**(i)**

Dews contends that the district court erred in failing to make a specific finding that he knew or reasonably should have foreseen the involvement of a particular quantity of drugs. *See id.* The PSR found that Dews and his co-conspirators were responsible for distributing 57.98 grams of cocaine base within 1,000 feet of a public school. In determining an appropriate sentence, the PSR then found that Dews was responsible for that amount. Dews objected to this finding both in writing and at the sentencing hearing, arguing that it was not reasonably foreseeable to him that his co-conspirators would distribute such a large quantity of drugs. At the sentencing hearing, the district court overruled his objection. Dews now argues that because the district court did not explicitly state that it was reasonably foreseeable to Dews that the conspiracy would be responsible for the distribution of 57.98 grams of cocaine, his sentence should be vacated and the case remanded. After closely examining this contention, we determine that it is without merit.

---

U.S.S.G. § 1B1.3(a)(1) (Nov. 1991). "Conduct `for which the defendant would otherwise be accountable' . . . includes conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant." U.S.S.G. § 1B1.3, comment. (n.1).

-28-

The district court's oral rejection of Dews' objections to the PSR satisfies Fed.R.Crim.P. 32(c)(3)(D).[22]  *See United States v. Stouffer*, 986 F.2d 916, 927 (5th Cir. 1993) (stating that the trial court's express rejection of the defendant's challenge to a PSR satisfies Rule 32(c)(3)(D)), *petition for cert. filed*, (U.S. May 24, 1993) (No. 92-8827).  By rejecting Dews' allegation that the quantity of drugs for which the PSR held him responsible was not reasonably foreseeable to him, the district court found that this quantity was reasonably foreseeable to Dews.  *See United States v. Lghodaro*, 967 F.2d 1028, 1030 (5th Cir. 1992) ("While the court did not expressly state that it found the brother's conduct was reasonably foreseeable to Lghodaro, the meaning of the court's finding is clear.").  This conclusion is buttressed by the district court's application of the reasonably foreseeable standard to the sentence enhancement given Dews for his co-conspirator's possession of a firearm.  *See* discussion *supra* part VI.B.  The district court enhanced Dews' sentence immediately after overruling Dews' objection to the quantity finding.  Accordingly, we reject Dews' claim that the district court did not make a specific finding as to the quantity of drugs reasonably foreseeable to him.

---

[22]    Rule 32(c)(3)(D) provides:

If the comments of the defendant and the defendant's counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report or the summary of the report or part thereof, the court shall, as to each matter controverted, make . . . a finding as to the allegation . . . .

Alternatively, we conclude that district court's failure to make a specific finding as to the quantity of drugs reasonably foreseeable to Dews was harmless error. *See Williams v. United States*, 112 S. Ct. 1112, 1120-21, 117 L. Ed. 2d 341 (1992) (stating that "once the court of appeals has decided that the district court misapplied the Guidelines, a remand is appropriate unless the reviewing court concludes, on the record as a whole, that the error was harmless"); *United States v. Reese*, __ F.2d __, slip op. at 13 (5th Cir. Aug. 13, 1993) (stating that where the defendant challenges the accuracy of a PSR, the district court's finding "need not be in any particular form, as long as this Court is able to determine from the record whether the district court found the challenged fact in favor of or against the defendant and whether the fact affected the sentence"). The record reflects that Dews was an early member of the conspiracy, sold drugs to an undercover agent, and arranged for the sale of a substantial quantity of drugs to the agent. *Cf. United States v. Thomas*, 963 F.2d 63, 65 (5th Cir. 1992) (stating that "an individual dealing in a sizable amount of controlled substances ordinarily will be presumed to recognize that the drug organization with which he deals extends beyond his universe of involvement").

Because the record does reflect substantial evidence indicating that Dews knew or should have reasonably foreseen the amount of drugs distributed by the conspiracy, "[t]o vacate and remand this case for resentencing would be to engage in a hollow

-30-

act and to waste judicial resources which are sorely needed to deal with the ever increasing matters of substance." *United States v. Piazza*, 959 F.2d 33, 37 (5th Cir. 1992). Consequently, we uphold the sentence imposed by the district court.[23]

**(ii)**

Spignor also contends that the district court improperly held him accountable for an excessive quantity of drugs. Spignor, however, failed to raise this objection in the district court. Consequently, he may not raise such objections now, absent plain error. *See United States v. Lopez*, 923 F.2d 47, 49 (5th Cir.), *cert. denied*, 111 S. Ct. 2032, 114 L. Ed. 2d 117 (1991). "Questions of fact capable of resolution by the district court upon proper objection at sentencing can never constitute plain error." *Id.* at 50. The PSR, which was adopted by the district court, found that Spignor should have reasonably foreseen that his co-conspirators would distribute 57.98 grams of cocaine. Because the quantity of drugs reasonably foreseeable to Spignor is a question of fact that the district court resolved at sentencing without objection, *see United States v. Rivera*, 898 F.2d 442, 445 (5th Cir.

---

[23] Although we recognize that in analogous cases we have vacated the sentence and remanded to the district court for specific findings as to whether a defendant knew about or should have reasonably foreseen the involvement of any particular amount of drugs, *see United States v. Webster*, 960 F.2d 1301, 1309-10 (5th Cir.), *cert. denied*, 113 S. Ct. 355, 121 L. Ed. 2d 269 (1992); *United States v. Puma*, 937 F.2d 151, 159-60 (5th Cir. 1991), *cert. denied*, 112 S. Ct. 1165, 117 L. Ed. 2d 412 (1992), these cases are distinguishable because neither opinion applied the standard announced by the Supreme Court in *Williams*.

1990) (holding that the quantity of drugs implicated by a crime is a factual question), we refuse to reach the merits of his claim.

**D**

Spignor contends that the district court erred in refusing his request to downwardly depart from the sentencing guidelines. Spignor argues that the district court used remote convictions to increase his applicable Criminal History Category.[24]  A downward departure from the sentencing guidelines, however, is authorized only for circumstances not adequately taken into consideration by the Sentencing Commission when it promulgated the guidelines. *United States v. O'Brien*, 950 F.2d 969, 970-71 (5th Cir. 1991), *cert. denied*, 113 S. Ct. 64, 121 L. Ed. 2d 31 (1992).  Because the sentencing guidelines adequately take into account the remoteness of prior convictions considered for determining a defendant's Criminal History Category, *see* U.S.S.G. § 4A1.1, comment. (n. 1), a downward departure on the ground Spignor asserts would be inappropriate.  In any event, Spignor fails to identify any law violated by the district court's refusal to depart from the Guidelines, and we do not review refusals to depart absent a violation of law.  *United States v. Guajardo*, 950 F.2d 203, 208 (5th Cir. 1991), *cert. denied*, 112 S. Ct. 1773, 118 L. Ed. 2d 432 (1992);  *United States v. Pierce*, 893 F.2d 669, 678 (5th Cir.

---

[24]    To the extent Spignor bases his argument on the fact that he was a minimal or minor participant in the conspiracy, we consider it without merit.  *See* discussion *supra* part VI.A.

-32-

1990). Consequently, we uphold the district court's refusal to downwardly depart from the Guidelines.

**E**

Dews argues that because he was a minor participant in the conspiracy, the rule of lenity applies and "mandates the exclusion of relevant conduct under sentencing guidelines that attributes the entire quantity of drugs to [him] and further exclusion of the firearm enhancement."[25] We have already found that the district court reached proper conclusions on all the justifications raised by Dews for application of the rule of lenity. *See* discussion *supra* parts VI.A, B, and C. We therefore find that application of the rule is not warranted here.

**VII**

For the foregoing reasons, we **AFFIRM** the district court's judgment in all respects.

---

[25] The rule of lenity requires that where a federal criminal statute is ambiguous, the ambiguity be resolved in favor of the defendant. *Dowling v. United States*, 473 U.S. 207, 229, 105 S. Ct. 3127, 87 L. Ed. 2d 152 (1985).